## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

**TURNING POINT USA AT ARKANSAS STATE UNIVERSITY**, *et al.***,**

          Plaintiffs,

    v.

**RON RHODES,** *et al.*,

          Defendants.

Case No. 3:17-cv-00327-JLH

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

ARGUMENT ..................................................................................... 4

I.   Plaintiffs have standing to challenge the Speech Zone Policy. ............... 6

    A.   Plaintiffs have suffered an injury. ........................................... 6

    B.   A favorable outcome for Plaintiffs will redress Plaintiffs' injury. ........ 8

II.  Defendants' Speech Zone Policy broadly curtails student speech on
     campus. ...................................................................................... 9

III. All Defendants were personally involved in (and thus can be held
     liable for) violating Plaintiffs' rights. .................................................. 11

IV.  As Plaintiffs pleaded that Defendants are violating their clearly
     established rights, nobody merits qualified immunity. ......................... 14

    A. Defendants' Speech Zone Policy violates Plaintiffs' clearly
       established free speech rights. ............................................... 15

       1.   Defendants' Speech Zone Policy is viewpoint-based, which is
            unconstitutional in any forum. ........................................ 17

            a.   The Speech Zone Policy grants officials unbridled
                 discretion. ...................................................... 17

            b.   The Speech Zone Policy does not prevent viewpoint
                 discrimination. ................................................. 21

       2.   Defendants' Speech Zone Policy is an illegal prior restraint in
            areas that are at least unlimited designated public fora. ............... 22

            a.   The First Amendment protects Plaintiffs' expression. ............... 23

            b.   Defendants' Speech Zone Policy restricts speech in areas
                 that are at least unlimited designated public fora. ................... 24

            c.   The Speech Zone Policy is content-based. ................................. 25

d.  Defendants' Speech Zone Policy fails intermediate scrutiny. ....... 26

    i.  Defendants' Speech Zone Policy contains five features that flunk intermediate scrutiny. ....................................... 27

    ii.  Defendants' asserted interests do not satisfy intermediate scrutiny. ......................................................... 31

e.  The Speech Zone Policy fails strict scrutiny. .............................. 32

f.  Defendants' Speech Zone Policy does not provide ample alternative means of communication........................................... 33

g.  The Speech Zone Policy lacks the protections required of content-based prior restraints..................................................... 34

h.  Defendants' Speech Zone Policy fails the scrutiny for nonpublic fora............................................................................... 34

3.  Defendants' Speech Zone Policy is overbroad as it restricts a substantial amount of protected speech. ......................................... 35

B. Defendants' Speech Zone Policy violates Plaintiffs' clearly established Fourteenth Amendment Right to Due Process. ................. 36

CONCLUSION ................................................................................................ 37

CERTIFICATE OF SERVICE ................................................................................ 39

TABLE OF AUTHORITIES

CASES

*American-Arab Anti-Discrimination Committee v. City of Dearborn*,
    418 F.3d 600 (6th Cir. 2005) .................................................................. 27

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................. 5

*Ball v. City of Lincoln,*
    870 F.3d 722 (8th Cir. 2017) .................................................................. 2

*Bantam Books, Inc. v. Sullivan,*
    372 U.S. 58 (1963) ................................................................................. 23

*Board of Airport Commissioners of Los Angeles v. Jews for Jesus, Inc.,*
    482 U.S. 569 (1987) ....................................................................... 1, 34, 35

*Board of Regents of University of Wisconsin System v. Southworth,*
    529 U.S. 217 (2000) ............................................................................... 21

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................................... 4, 5, 6

*Bell v. City of Winter Park,*
    745 F.3d 1318 (11th Cir. 2014) .............................................................. 33

*Bowman v. White,*
    444 F.3d 722 (8th Cir. 2006) .......................................................... *passim*

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) .......................................................... *passim*

*Burbridge v. Sampson,*
    74 F. Supp. 2d 940 (C.D. Cal. 1999) ................................................. 16, 29

*Burk v. Augusta-Richmond County,*
    365 F.3d 1247 (11th Cir. 2004) ......................................................... 25, 27

*Child Evangelism Fellowship of Minnesota v. Minneapolis Special School District No. 1*,
  690 F.3d 996 (8th Cir. 2012)..................................................................... 17

*City of Chicago v. Morales*,
  527 U.S. 41 (1999) ................................................................................... 36

*City of Lakewood v. Plain Dealer Publishing Co.*,
  486 U.S. 750 (1988) .................................................................... 17, 18, 22

*City of Oklahoma City v. Tuttle*,
  471 U.S. 808 (1985) ............................................................................ 12, 13

*Conley v. Gibson*,
  355 U.S. 41 (1957) .................................................................................. 4, 5

*Connally v. General Construction Co.*,
  269 U.S. 385 (1926) .................................................................................. 37

*Cornelius v. NAACP Legal Defense & Education Fund*,
  473 U.S. 788 (1985) ..................................................................... 22, 24, 35

*DeJohn v. Temple University*,
  537 F.3d 301 (3d Cir. 2008) ........................................................... 1, 2, 31

*Dodds v. Richardson*,
  614 F.3d 1185 (10th Cir. 2010) .............................................................. 12

*Douglas v. Brownell*,
  88 F.3d 1511 (8th Cir. 1996).................................................................... 27

*Forsyth County v. Nationalist Movement*,
  505 U.S. 123 (1992) ........................................................................ *passim*

*Freedman v. Maryland*,
  380 U.S. 51 (1965) ................................................................................ 8, 34

*Frisby v. Schultz*,
  487 U.S. 474 (1988)................................................................................... 26

*Grace Christian Life v. Woodson*,
  2016 WL 3194365 (E.D.N.C. June 4, 2016) ........................................... 15

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ................................................................ 36

*Gregoire v. Centennial School District,*
    907 F.2d 1366 (3d Cir. 1990) .............................................. 31

*Grossman v. City of Portland,*
    33 F.3d 1200 (9th Cir. 1994) ......................................... 27, 28

*Hafer v. Melo,*
    502 U.S. 21 (1991) ................................................................ 14

*Hays County Guardian v. Supple,*
    969 F.2d 111 (5th Cir. 1992) ................................................ 15

*Healy v. James,*
    408 U.S. 169 (1972) ................................................... 2, 15, 23

*Holloman v. Harland,*
    370 F.3d 1252 (11th Cir. 2004) ........................................14, 31

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ..............................................................14

*In re Pre-Filled Propane Tank Antitrust Litigation,*
    860 F.3d 1059 (8th Cir. 2017) ...............................................5

*International Society for Krishna Consciousness, Inc. v. Lee,*
    505 U.S. 672 (1992) .............................................................. 35

*Iowa League of Cities v. E.P.A.,*
    711 F.3d 844 (8th Cir. 2013) ..................................................6

*Josephine Havlak Photographer, Inc. v. Village of Twin Oaks,*
    864 F.3d 905 (8th Cir. 2017) .......................................... 23, 35

*Justice for All (JFA) v. Faulkner,*
    410 F.3d 760 (5th Cir. 2005) ................................................ 15

*Keyishian v. Board of Regents of University of New York,*
    385 U.S. 589 (1967) ................................................................1

*Khademi v. South Orange County Community College District,*
194 F. Supp. 2d 1011 (C.D. Cal. 2002) .........................................15, 28, 29

*Knowles v. City of Waco,*
462 F.3d 430 (5th Cir. 2006)................................................... 27

*Krantz v. City of Fort Smith,*
160 F.3d 1214 (8th Cir. 1998)................................................ 26

*Lady J. Lingerie, Inc. v. City of Jacksonville,*
176 F.3d 1358 (11th Cir. 1999)................................... 18, 20, 22

*Lee v. International Society for Krishna Consciousness, Inc.,*
505 U.S. 830 (1992).............................................................. 35

*Lewis v. Wilson,*
253 F.3d 1077 (8th Cir. 2001)................................................ 21

*Long Beach Area Peace Network v. City of Long Beach,*
574 F.3d 1011 (9th Cir. 2009)................................................ 33

*Mayorga v. Missouri,*
442 F. 3d 1128 (8th Cir. 2006).............................................. 12

*McCauley v. University of Virgin Islands,*
618 F.3d 232 (3d Cir. 2010) ...................................................9

*McClure v. Watson,*
833 F.Supp.2d 1083 (E.D. Ark. 2011) .....................................5, 6

*McCullen v. Coakley,*
134 S. Ct. 2518 (2014).......................................................... 26

*McIntyre v. Ohio Elections Commission,*
514 U.S. 334 (1995).............................................................. 24

*Morse v. Frederick,*
551 U.S. 393 (2007).............................................................. 31

*Nebraska Press Association v. Stuart,*
427 U.S. 539 (1976) ..............................................................23

*Nix v. Norman,*
     879 F.2d 429 (8th Cir. 1989)..................................................................... 14

*Nord v. Walsh County,*
     757 F.3d 734 (8th Cir. 2014)......................................................................13

*OSU Student Alliance v. Ray,*
     699 F.3d 1053 (9th Cir. 2012)..................................................... 15, 16, 20

*Pro-Life Cougars v. University of Houston,*
     259 F. Supp. 2d 575 (S.D. Tex. 2003)........................................ 16, 20, 22

*Redd v. Conway,*
     160 F. App'x 858 (11th Cir. 2005) ......................................................... 12

*Reed v. Town of Gilbert,*
     135 S. Ct. 2218 (2015).................................................................... 25, 32

*Regan v. Time, Inc.,*
     468 U.S. 641 (1984)........................................................................ 25, 26

*Republican Party of Minnesota v. White,*
     416 F.3d 738 (8th Cir. 2005).................................................... 26, 32, 33

*Ritchie v. St. Louis Jewish Light,*
     630 F.3d 713 (8th Cir. 2011)....................................................................5

*Roach v. Stouffer,*
     560 F.3d 860 (8th Cir. 2009).................................................................. 17

*Roberts v. Haragan,*
     346 F. Supp. 2d 853 (N.D. Tex. 2004) ....................................... 15, 28, 29

*Rosenberger v. Rector & Visitors of University of Virginia,*
     515 U.S. 819 (1995)................................................................................ 25

*Schneider v. New Jersey,*
     308 U.S. 147 (1939)......................................................................... 23, 24

*Shuttlesworth v. City of Birmingham,*
     394 U.S. 147 (1969).......................................................................*passim*

*Smith v. Tarrant County College District,*
  670 F. Supp. 2d 534 (N.D. Tex. 2009) ..................................................... 17

*Stephenson v. Davenport Community School District,*
  110 F.3d 1303 (8th Cir. 1997) .................................................................. 36

*Sweezy v. New Hampshire,*
  354 U.S. 234 (1957) ................................................................................... 1

*Terminiello v. City of Chicago,*
  337 U.S. 1 (1949) ...................................................................................... 15

*Thomas v. Chicago Park District,*
  534 U.S. 316 (2002) .................................................................................. 34

*Thomas v. Collins,*
  323 U.S. 516 (1945) ...................................................................................28

*Tinker v. Des Moines Independent Community School District,*
  393 U.S. 503 (1969) ............................................................................... 1, 2

*United States. v. Kistner,*
  68 F.3d 218 (8th Cir. 1995) ................................................................ 22, 23

*University of Cincinnati Chapter of Young Americans for Liberty v. Williams,*
  2012 WL 2160969 (S.D. Ohio June 12, 2012) ...................... 15, 28, 29, 37

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
  455 U.S. 489 (1982) .................................................................................. 36

*Walker v. Wegner,*
  624 F.2d 60 (8th Cir. 1980) ..................................................................... 34

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ............................................................................ 23, 33

*Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton,*
  536 U.S. 150 (2002) ................................................................ 9, 27, 28, 32

*Widmar v. Vincent*,
     454 U.S. 263 (1981) ..................................................................... 15, 22, 31

*Will v. Michigan Department of State Police*,
     491 U.S. 58 (1989) ............................................................................. 13


<u>Statutes</u>

42 U.S.C. § 1983 ............................................................................................. 12


<u>Rules</u>

Fed. R. Civ. P. 8 ............................................................................................... 4

Fed. R. Civ. P. 8 (a)(2)) ............................................................................... 4, 5

# INTRODUCTION

"The essentiality of freedom in the community of American universities is almost self-evident." *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957). Our "Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth out of a multitude of tongues, rather than through any kind of authoritative selection." *Keyishian v. Bd. of Regents of Univ. of N.Y.*, 385 U.S. 589, 603 (1967) (internal quotation omitted). "[S]tudents must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die." *Id.* Thus, "free speech is of critical importance because it is the lifeblood of academic freedom." *DeJohn v. Temple Univ.*, 537 F.3d 301, 314 (3d Cir. 2008).

Ignoring this, Defendants enforced its speech policy that treats students as if they should be seen but not heard. When Ms. Hoggard set up a table on the edge of a large walkway outside the Reng Student Union on Arkansas State University's ("ASU") campus to talk with other students about her student group, Defendants quickly stopped her, enforcing their Speech Zone Policy, because she was outside the speech zones and had not obtained a permit to speak outside the speech zones at least 72 hours in advance (which they could deny for any reason).

This policy "create[s] a virtual 'First Amendment Free Zone'" on campus, which has been illegal in airports for thirty years, let alone in the "marketplace of ideas." *Bd. of Airport Comm'rs of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987). Even in elementary school, "free speech is not a right that is given

1

only to be so circumscribed that it exists in principle but not in fact." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969). And Defendants are granted significantly "*less leeway* in regulating student speech than are public elementary or high school administrators." *DeJohn*, 537 F.3d at 316. Over forty years ago, the Supreme Court held that "state colleges and universities are not enclaves immune from the sweep of the First Amendment" and its "precedents . . . leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large." *Healy v. James*, 408 U.S. 169, 180 (1972).

In support of their Motion, Defendants rely almost exclusively on *Bowman v. White*, 444 F.3d 722 (8th Cir. 2006).[1] Defendants incorrectly assert that the Speech Zone Policy is substantively identical to the policy upheld in *Bowman*. The Speech Zone Policy differs in three significant ways from the *Bowman* policy.

First, the *Bowman* policy was content-neutral and thus was subject to intermediate scrutiny. *Id.* at 980. Here, the Speech Zone Policy is content- and viewpoint-based and is subject to strict scrutiny because it grants unbridled discretion to Defendants to deny permission to students to speak anywhere on

---

[1] Defendants also cite to but do not discuss *Ball v. City of Lincoln,* 870 F.3d 722 (8th Cir. 2017). *Ball* is not controlling because the court held that the area at issue was a nonpublic forum. Here, Defendants admit for purposes of this Motion that the open, outdoor areas of the University are an unlimited designated public forum. Defs.' MTD Br. in Supp. of Mot. to Dismiss of all Defs. ("Defs.' MTD Br.") 12, ECF No. 12.

campus. *See supra* Part IV.A.1. The Speech Zone Policy cannot survive strict scrutiny.

Second, the *Bowman* policy did not apply to students but only to non-students. *Id*. at 981. In contrast, the Speech Zone Policy requires all ASU students to obtain permission from Defendants before speaking anywhere on campus. This permission must be granted 72 hours in advance if speaking anywhere outside the speech zones which encompass 99% of the campus. Plaintiffs are not aware of any decision, and Defendants do not cite to one, that has ever upheld a policy requiring students to obtain permission 72 hours prior to speaking with other students anywhere in the open, outdoor area of campus.

Finally, the *Bowman* Court upheld the prior permit requirement because the plaintiff was a non-student, street preacher who had "demonstrated the capacity to attract a crowd and disrupt the unique educational environment." *Id*. The crowds were sometimes as large as 200. The Court found that "[u]nder these circumstances" the permit requirement is justified to serve the university's interests. *Id*. Here the Speech Zone Policy applies to students. And it requires a permit 72 hours in advance even for a single student to speak with other students in the open, outdoor areas of campus. In fact, the Speech Zone Policy was enforced to stop Ms. Hoggard and her invited guest from speaking with other students on a large walkway on the ASU campus. Thus, *Bowman* is not controlling because it involved a content-neutral policy applied to a non-student that attracted large crowds which had disrupted the campus.

Instead, the overwhelming consensus among federal courts, including *Bowman*, is that the open, outdoor, generally accessible areas of campus are designated public fora for students. And that efforts to quarantine their speech to small "speech zones" violate the First Amendment, especially when officials can discriminate due to content or viewpoint. Thus, this case and Defendants' motion present the Court with the following questions:

(i)     Can Defendants limit all students that wish to engage in "speaking, demonstrating and other forms of expression" to seven small speech zones that comprise less than 1% of the campus, require prior permission before using such zones, and employ unbridled discretion in considering the request?

(ii)    Can Defendants require all students to obtain a permit three days in advance of speaking anywhere on campus other than the small speech zones and employ unbridled discretion in considering the permit?

The answer is: "No." This is why Plaintiffs easily exceed the minimal standard of Fed. R. Civ. P. 8 (*i.e.*, "a short and plain statement . . . showing [they are] entitled to relief"). This is why they plausibly pleaded claims that will ultimately succeed, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), just like many other student plaintiffs. And this is why this motion should be denied.

## ARGUMENT

Plaintiffs' well-pleaded Verified Complaint satisfies the Federal Rules' liberal pleading standard. Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled

4

to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8 (a)(2)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations; the plaintiff needs to provide the "grounds" of his "entitle[ment] to relief." *Id.* To defeat this motion, Plaintiffs must simply provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). "A complaint states a plausible claim for relief if its 'factual content … allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*). The alleged facts just have to "'raise a right to relief above the speculative level.'" *In re Pre-Filled Propane Tank Antitrust Litigation*, 860 F.3d 1059, 1063 (8th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).

At this stage, the Court must "construe the complaint in the light most favorable to [Plaintiffs]." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 715-16 (8th Cir. 2011) (quotations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that recovery is very remote and unlikely." *Braden*, 588 F.3d at 594 (quoting *Twombly*, 550 U.S. at 556) (quotations omitted).

The Complaint pleads detailed facts about Defendants' policies, Plaintiffs' Verified Complaint ("Compl.") ¶¶ 73-99, ECF No. 1, and their enforcement, *id.* ¶¶ 100-126. It "raise[s] a reasonable expectation that discovery will reveal

evidence" to support Plaintiffs' allegations. *McClure v. Watson*, 833 F. Supp. 2d 1083, 1087 (E.D. Ark. 2011) (quoting *Twombly*, 550 U.S. at 556) (quotations omitted). Thus, this motion should be denied.

## I.   Plaintiffs have standing to challenge the Speech Zone Policy.

A complaint must contain three elements to establish Article III standing: "(1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013) (citation omitted). Defendants argue that Plaintiffs do not have standing to challenge the Speech Zone Policy for two reasons. Defs.' MTD Br. 5-7. First, Defendants argue that Plaintiffs have not shown an injury from the Speech Zone Policy because Plaintiffs never submitted a request to Defendants for a permit to speak on campus and thus Defendants have never been denied their right to speak. Second, Defendants argue that Plaintiffs have not challenged the Speech Zone Policy's prohibition on the use of stands, tables, or booths outside the speech zones and thus a favorable decision would not redress Plaintiffs' alleged injury. The Defendants are incorrect.

### A. Plaintiffs have suffered an injury.

The Complaint alleges that Ms. Hoggard and her invited guest were on the large walkway outside of the Reng Student Union talking with students about their constitutional rights and promoting the TPUSA student group. Compl. ¶¶ 104-106. The Complaint further alleges that a University administrator and a campus police officer ordered Ms. Hoggard and her guest to stop speaking with

students and immediately leave the area because they were speaking with students outside of the speech zones and thus were in violation of Defendants' Speech Zone Policy. Compl. ¶¶ 109-110. Finally, the Complaint alleges that Ms. Hoggard and her guest complied with the order, stopped speaking with students, and left the area. Compl. ¶¶ 113-114. The allegations of the Complaint plainly establish that Defendants violated Plaintiffs' First Amendment rights by enforcing the Speech Zone Policy and ordering them to stop speaking with other students in an open, outdoor area of campus.

Despite these plain allegations, Defendants inexplicably argue that Plaintiffs have not suffered any injury because they never submitted a request to Defendants or any other University administrator requesting permission to use any part of the campus for expressive activities. Defs.' MTD Br. 6. And therefore they argue there has never been a denial or other injury. *Id.* This argument is wrong for two reasons. First, as detailed above, the Complaint alleges that Defendants denied Plaintiffs the right to speak on campus by ordering them to stop speaking with students and leave the area. Thus, the Complaint does allege that Defendants denied Plaintiffs the right to speak on campus pursuant to the Speech Zone Policy and that Plaintiffs have suffered injury as a result of such denial. This is true regardless of whether Plaintiffs requested Defendants' permission prior to speaking.

Second, Defendants' argument puts the cart before the horse. The primary thrust of Plaintiffs' claims is that the Speech Zone Policy violates the First Amendment because it requires Plaintiffs to obtain Defendants' permission

before speaking anywhere on campus. Yet, Defendants assert that Plaintiffs have not suffered any injury—and thus have no standing—because they never requested permission from Defendants prior to speaking on campus. Defendants' argument is circular and without merit. The Complaint alleges that Defendants enforced the Speech Zone Policy against Plaintiffs and ordered them to stop speaking with students because Plaintiffs were speaking outside the speech zone without Defendants' prior permission. The Supreme Court has made clear that "[i]n the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, *and whether or not he applied for a license.*" *Freedman v. Maryland*, 380 U.S. 51, 56 (1965) (emphasis added). Thus, Plaintiffs have standing to challenge the policy.

### B. A favorable outcome for Plaintiffs will redress Plaintiffs' injury.

Defendants argue that Plaintiffs lack standing because a favorable outcome will not redress Plaintiffs' alleged injury. Defendants' argument is premised on the assertion that the Complaint does not challenge the Speech Zone Policy's prohibition on the use of stands, tables, or booths outside the expression area. Defendants' assertion is wrong. The Complaint plainly challenges this prohibition: "The ASU Speech Zone Policy grants unbridled discretion to Defendant Spack, as the Director of Student Development and Leadership, to grant students permission to set up a stand, table, or booth in the Freedom of Expression Areas." Compl. ¶ 88. Further, "[b]y granting unbridled discretion to

discriminate against speech based on its content or viewpoint, the Speech Zone Policy violates the First Amendment regardless of whether that discretion has ever been unconstitutionally applied in practice." Compl. ¶ 159. Thus, the Complaint challenges this unconstitutional prohibition. And a favorable outcome will redress Plaintiffs' alleged injury.

## II. Defendants' Speech Zone Policy broadly curtails student speech on campus.

Defendants insist the Speech Zone Policy "strikes the correct balance between furthering the rights of free speech and preserving ASU's mission of education." Defs.' MTD Br. 25. Defendants' spin contradicts what the policy says and how it was enforced. These facts matter more for students who, like Plaintiffs, "remain subject to university rules at almost all hours of the day." *McCauley v. Univ. of V.I.*, 618 F.3d 232, 247 (3d Cir. 2010); *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 165 (2002) ("The mere fact that [these policies] cover[] so much speech raises constitutional concerns."). These facts show there is no place for free speech at ASU, and they must be taken as true. *Braden*, 588 F.3d at 594.

ASU's campus is approximately 1,376 acres composed of various publicly-accessible buildings and outdoor areas, including public streets, sidewalks, open-air quadrangles, and parks with large cultivated grass areas, trees, benches, and sidewalks. Compl. ¶¶ 64-67. The outdoor areas of the University's campus are open to the public and there are no gates or barriers to pedestrian entry. *Id*. Ms. Hoggard and her guest set up a table on the edge of a large walkway outside of the Reng Student Union to talk with students about

TPUSA, encourage them to become members, and talk about their constitutional rights. *Id.* ¶ 104. They were not blocking any entrance or exit to any buildings, impeding access to the buildings or parking lots, or blocking free flow of traffic on the sidewalks. *Id.* ¶ 107. They simply stood where students freely walk and congregate, and conversed with willing passersby. Compl. ¶ 108. But they quickly learned that free speech was not allowed there, as Defendants enforced the Speech Zone Policy and ordered them to leave the area or face punishment. *Id.* ¶¶ 109-114. Since then, Ms. Hoggard has refrained from speaking with other students and promoting her TPUSA group outside of the speech zones because of the fear of arrest and punishment. *Id.* ¶ 115.

Defendants' Speech Zone Policy applies to every form of students' expressive activity and encompasses the entire campus. Under that policy, students are prohibited from "speaking, demonstrating and other forms of expression" anywhere in the open, outdoor areas of ASU's 1,376 acre campus without obtaining Defendants' prior permission. *Id.* ¶¶ 109-114. The policy establishes seven small speech zones that are designated for students' expressive activities. *Id.* ¶ 78. The speech zones comprise approximately 1% of the entire campus. *Id.* ¶ 79. The speech zones are only open from 8:00 a.m. to 9:00 p.m. Monday through Friday. *Id.* ¶ 80. If students want to use the speech zones, they must first obtain the permission of Defendant Spack. *Id.* ¶ 81. But the policy does not limit Defendant Spack's discretion in determining whether to grant permission. *Id.* ¶ 82. And the policy provides no guidance on when these permits must be granted. *Id.* ¶ 90. If students wish to engage in any expressive

activities outside the speech zones, including just one student wishing to talk with other students, they must obtain permission at least 72 hours in advance from Defendants Stripling or Spack. *Id.* ¶ 83. As with the permit for use of the speech zones, the policy does not limit their discretion in determining whether to grant permission and provides no guidance on when these permits must be granted. *Id.* ¶¶ 84, 90.

Additionally, students are prohibited from distributing written materials anywhere on campus except in the speech zones and eight other small areas designated in the policy. *Id.* ¶ 85. Students are prohibited from using a stand, table, or booth except in the speech zones, and they must obtain prior permission from Defendant Spack. *Id.* ¶ 87. Pursuant to the two distinct areas established by the policy, in some areas of the campus students are allowed to distribute literature but they may not engage in verbal expression while doing so. *Id.* ¶ 86.

As Ms. Hoggard quickly learned, speech is not free at ASU. Students cannot speak anywhere on campus without obtaining Defendants' prior permission. For areas outside the speech zones, that permission must be obtained at least 72 hours in advance, even if the activity involves just one student wishing to speak with her fellow students about important, contemporaneous events.

### III. All Defendants were personally involved in (and thus can be held liable for) violating Plaintiffs' rights.

All of the Defendants seek dismissal, saying that none of them ever affirmatively acted to deny Plaintiffs any rights. Defs.' MTD Br. at 25. But they ignore controlling law and the facts in the Complaint, which must be taken as

true. *Braden*, 588 F.3d at 594.

A supervisor violates § 1983 through "personal involvement in, or direct responsibility for, a deprivation of [a person's] constitutional rights." *Mayorga v. Missouri*, 442 F. 3d 1128, 1132 (8th Cir. 2006). This "[p]ersonal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (citation omitted). It includes when a "policy is 'the moving force of the constitutional violation.'" *Redd v. Conway*, 160 F. App'x 858, 861 (11th Cir. 2005) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 820 (1985)). That is:

> § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution. . . ."

*Dodds*, 614 F. 3d at 1199 (quoting 42 U.S.C. § 1983).

The Complaint pleads that Defendants' Speech Zone Policy is the "moving force of the constitutional violation." *Tuttle*, 471 U.S. at 820. It outlines the policy's flaws. Compl. ¶¶ 73-99, 115-26. It states the policy was enforced. *Id.* ¶¶ 100-114. It details how the enforcement of the policy inflicted irreparable injury. *Id.* ¶¶ 122-26. These facts must be taken as true, *Braden*, 588 F.3d at 594, and amply show that Defendants' policy is the "moving force" behind the violation. *Tuttle*, 471 U.S. at 820. This alone establishes personal involvement.

Moreover, the Complaint pleads that Defendants personally participated in creating, implementing, and enforcing the Speech Zone Policy:

- *Defendants Rhodes, Langford, Crowson, Crawford,* and *Gardner* are responsible for "the adoption and authorization of policies that govern students that attend the ASU System, including the ASU System Speech Zone Policy," *id.* ¶ 24; final policymaking at ASU, *id.* ¶¶ 25; "enactment, amendment, and repeal of the Board of Trustees' policies, including the ASU System Speech Zone Policy", *id.* ¶ 26; and "possess the authority to change and enforce" the Speech Zone Policy, *id.* ¶ 27.
- *Defendant Welch* is responsible for enforcement of ASU System policies, including, the Speech Zone Policy, *Id.* ¶ 34; and has authority to change the policy but did not do so. *Id.* ¶ 35.
- *Defendant Damphousse* is responsible for enforcement of ASU policies, including, the Speech Zone Policy, *id.* ¶ 41; "possesses the authority and responsibility for coordination and approval of expression by students, employees, and third parties on campus, *id.* ¶ 42; "has the authority to review, approve, or reject the decisions of other University officials and the other Defendants regarding the ASU Speech Zone Policy", *id.* ¶ 44; and "failed to stop any ASU officials from applying the ASU Speech Zone Policy to restrict Plaintiffs' expression," *id.* ¶ 45.
- *Defendant Stripling* is "responsible for the enforcement of the ASU Speech Zone Policy and its application to Plaintiffs' speech," *id.* ¶ 48; "possesses the authority and responsibility for regulation of campus expression by students," *id.* ¶ 49; and "has authority under the ASU Speech Zone Policy to review, approve, modify, or reject requests by students to use campus facilities and grounds," *id.* ¶ 50.
- *Defendant Spack* "has authority under the ASU Speech Zone Policy to review, approve, modify, or reject requests by students to use campus facilities and grounds," *id.* ¶ 56; and "possesses the authority to enforce the ASU Speech Zone Policy," *id.* ¶ 58.

Plaintiffs pleaded that Defendants participated personally in creating, implementing, and enforcing the policies that are "the moving force of the constitutional violation." *Tuttle*, 471 U.S. at 820. As these facts must be accepted, Plaintiffs stated valid claims against each of them.[2] *Braden*, 588 F.3d at 594.

---

[2] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (quotation omitted). *But see* Defs.' MTD Br. 7-8.

## IV. As Plaintiffs pleaded that Defendants are violating their clearly established rights, nobody merits qualified immunity.

No Defendant merits qualified immunity—which affects only the damages claims[3]—as Plaintiffs alleged facts showing Defendants violated "a clearly established statutory or constitutional right of which a reasonable person would have known." *Nord v. Walsh Cty.*, 757 F.3d 734, 739 (8th Cir. 2014) (quotation omitted). Plaintiffs also pleaded official capacity claims for injunctive and declaratory relief.

To be clearly established, a constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* It is not "unreasonable to expect the [D]efendants—who holds themselves out as educators—to be able to apply . . . a standard, notwithstanding the lack of a case with material factual similarities." *Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004). "[P]recedents would be of little value if [Defendants] were free to disregard fairly specific statements of principle they contain and focus their attention solely on the particular factual scenarios in which they arose." *Id.*

---

[3]   Plaintiffs seek damages only from the "Defendants sued in their individual capacities." Compl. 21 ¶ C. *But see* Defs.' MTD Br. 39–40. "In individual-capacity suits, the Eleventh Amendment does not bar compensatory damages." *Nix v. Norman*, 879 F.2d 429, 433 n.3 (8th Cir. 1989) (citation omitted); *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

14

**A. Defendants' Speech Zone Policy violates Plaintiffs' clearly established free speech rights.**

Freedom of expression must be jealously guarded, particularly when it involves potentially controversial messages. *See, e.g., Terminiello v. City of Chi.*, 337 U.S. 1, 4 (1949) (noting free speech "best serve[s] its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger"). This principle extends with equal force to public colleges. *See, e.g., Widmar v. Vincent*, 454 U.S. 263, 268–69 (1981) ("With respect to persons entitled to be there, our cases leave no doubt that the First Amendment rights of speech and association extend to the campuses of state universities."); *Healy*, 408 U.S. at 180 ("[S]tate colleges . . . are not enclaves immune from the sweep of the First Amendment."). Despite Defendants' claims, Defs.' MTD Br. 11-17, it has been clearly established for decades that the First Amendment protects students on campus to the same degree it protects citizens off campus. *Healy*, 408 U.S. at 180 ("[T]he precedents of this Court leave no room of the view that . . . First Amendment protections should apply with less force on college campuses than in the community at large.").

Hence, federal courts routinely strike down policies like Defendants'. Numerous colleges have quarantined student speech using speech zones or permit requirements, but these policies violate the First Amendment.[4] For

---

[4]  *See, e.g., Justice for All (JFA) v. Faulkner*, 410 F.3d 760 (5th Cir. 2005); *Hays Cty. Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992); *Grace Christian Life v. Woodson*, 2016 WL 3194365 (E.D.N.C. June 4, 2016); *Univ. of Cincinnati Chapter of Young Ams. for Liberty v. Williams*, 2012 WL 2160969 (S.D. Ohio June 12, 2012); *Roberts v. Haragan*, 346 F. Supp. 2d 853 (N.D. Tex. 2004); *Khademi v. S. Orange Cty. Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011 (C.D. Cal.

15

example, Oregon State University regulated the placement of student newspaper newsbins on campus using a policy that "created no standards to cabin discretion" and "set no fixed standards" for deciding how the policy applied to students. *OSU Student All. v. Ray*, 699 F.3d 1053, 1064-65 (9th Cir. 2012). The Ninth Circuit held that the policy gave administrators unbridled discretion and determined that "no court has held that a standardless policy passes [constitutional] muster." *Id.* at 1064; *id.* at 1066 (noting need for clear standards).

Similarly, the University of Houston required students to obtain a permit before they could speak on campus and allowed administrators to determine if they were "potentially disruptive." *Pro-Life Cougars v. Univ. of Hous.*, 259 F. Supp. 2d 575, 577-78 (S.D. Tex. 2003). Administrators deemed a pro-life display "potentially disruptive" and relegated it to a remote area of campus. *Id.* at 578–79. The court held that the policy unconstitutionally granted unfettered discretion because it was devoid of objective guidelines or articulated standards that administrators should consider when determining whether something was "potentially disruptive" and because it did not require administrators to explain the rationale for their decisions. *Id.* at 583–84.

As a final example, a Texas community college required students to get a permit before they could speak on campus and relegated such speech to a "free-speech zone," but it failed to provide any objective criteria for administrators to use in evaluating a permit application. This policy violated the First

2002); *Burbridge v. Sampson*, 74 F. Supp. 2d 940 (C.D. Cal. 1999).

Amendment because it gave officials unfettered discretion to impose a prior restraint on speech. *Smith v. Tarrant Cty. Coll. Dist.*, 670 F. Supp. 2d 534, 538 (N.D. Tex. 2009).

As demonstrated by the numerous cases striking similar policies at other colleges and universities, Plaintiffs plausibly pleaded that Defendants' policy violates their rights of speech under the First Amendment.

### 1. Defendants' Speech Zone Policy is viewpoint-based, which is unconstitutional in any forum.

"Even in a non public forum, restrictions [on speech] must be viewpoint neutral." *Child Evangelism Fellowship of Minn. v. Minneapolis Special Sch. Dist. No. 1*, 690 F.3d 996, 1000 n.1 (8th Cir. 2012) (citation omitted). But Defendants' Speech Zone Policy discriminates due to viewpoint by giving unbridled discretion and lacking any protections against such discrimination. Thus, it is illegal in any forum, and this motion should be denied.

### a. The Speech Zone Policy grants officials unbridled discretion.

The Supreme Court "consistently condemn[s]" speech regulations that "vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 153 (1969). Policies that do so are treated as viewpoint-based. *Roach v. Stouffer*, 560 F.3d 860, 870 (8th Cir. 2009) ("[U]nbridled discretion to determine who may speak based on the viewpoint of the speaker . . . allows for viewpoint discrimination and is therefore unconstitutional."). Given vague or non-existent criteria, officials "may decide

who may speak and who may not based upon the content of the speech or viewpoint of the speaker." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 763–64 (1988). Speech restrictions must contain "narrow, objective, and definite standards to guide" officials, *Shuttlesworth*, 394 U.S. at 150–51, and cannot involve the "appraisal of facts, the exercise of judgment, and the formation of an opinion." *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) (quotation omitted). So "virtually any amount of discretion beyond the merely ministerial is suspect," and "[s]tandards must be *precise* and *objective*." *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1362 (11th Cir. 1999).

Defendants' Speech Zone Policy grants officials five layers of unbridled discretion. First, it gives them discretion over whether students can speak anywhere on campus, inside or outside the speech zones. Compl. ¶¶ 83-84. To use any outdoor area other than the speech zones (i.e., 99% of the campus), the policy says "[s]hould any individual or group desire the use of other areas for speeches and demonstrations, a request must be made to the Vice Chancellor for Student Affairs, his/her designee, or the Director of Student Development and Leadership at least 72 hours in advance of the event." Compl. at Ex. 3. Similarly, the policy says use of the speech zones must be "scheduled through the Director of Student Development and Leadership." *Id.* ¶¶ 81-82. Nothing says permission to use any area of the campus—inside or outside the speech zones—must be granted.

Second, they have discretion over whether students <u>must</u> use the speech

zones rather than any other outdoor area of campus. The policy says that the speech zones are designated for "peaceful and orderly protests and demonstrations." *Id.* The policy fails to define peaceful and orderly protests or demonstrations or to provide any factors to consider in making this determination.

Third, they have discretion over whether students can use the speech zones when they are closed (i.e., weekends, before 8:00 a.m., and after 9:00 p.m.). The policy says if students wish to use the zones during "other times for speeches and demonstrations" they must request permission 72 hours in advance. *Id.* at Ex. 3. It is silent on what permits to grant or the factors to consider.

Fourth, Defendants have unbridled discretion over who can set up a "stand, table or booth" in the speech zones. The policy says that they can be used "only with permission from the Director of Student Development and Leadership." *Id.* ¶¶ 87-88. Again, the policy is silent on what permits to grant or the factors to consider.

Fifth, the policy allows them to change the speech zones by designating additional areas as speech zones. In their Brief, Defendants allege that they have created another speech zone that is not yet identified in the policy. Defs.' MTD Br. 3 n.1. Nothing in the policy says when or how these zones can be modified, or sets forth the criteria they must use to modify them. *Id.* at Ex. 3.

Defendants argue that the policy does not grant unbridled discretion because the policy lists eight criteria for Defendants to apply when considering requests to speak. Defs.' MTD Br. 16. However, these criteria do not limit

Defendants' discretion. The policy makes it clear that the criteria are simply the minimum requirements that every request must meet before permission can be granted. Compl. at Ex. 3 ("the following stipulations shall apply, without exception, to any form of expression and will be used to evaluate any plan requiring approval"). Two of them actually grant officials unbridled discretion to determine what event "may obstruct" pedestrian or vehicular traffic, or whether to allow sound amplification. Compl. at Ex. 3. The others do not limit discretion. The policy just says the "stipulations shall apply" to all events. Compl. at Ex. 3. It does not say that speakers who meet them will be approved, that these are the only reasons a request can be denied, or that officials cannot deny requests for other, unwritten reasons. Compl. ¶ 92. Defendants could deny requests that meet all of them. *Id.*

At each of the five layers, Defendants' policy lacks the required "narrow, objective, and definite standards." *Forsyth Cty.*, 505 U.S. at 131 (quoting *Shuttlesworth*, 394 U.S. at 151). Instead, the policy is far from "*precise* and *objective*," giving officials far more than "merely ministerial" discretion. *Lady J. Lingerie*, 176 F.3d at 1362. It grants unbridled discretion, making it viewpoint-based and unconstitutional in any forum.[5]

---

[5]   Numerous courts have struck down college speech zones for granting unbridled discretion. *See, e.g., OSU Student All.*, 699 F.3d at 1063–66 (striking student newspaper bin restriction that "created no standards to cabin discretion" and "set no fixed standards" for applying the policy because it conferred unbridled discretion as "a standardless policy"); *Pro-Life Cougars*, 259 F. Supp. 2d at 577–79, 583–84 (striking policy letting officials to move "potentially disruptive" events as it lacked "any objective guidelines or articulated standards"); *Smith*, 670 F. Supp. 2d at 536, 538 (striking policy requiring students get a permit twenty-four hours before speaking in a speech zone for granting "unfettered discretion in imposing prior restraints on speech in public forums").

### b. The Speech Zone Policy does not prevent viewpoint discrimination.

Policies cannot be viewpoint neutral without including affirmative "protection . . . for viewpoint neutrality." *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 235 (2000). "Where a regulation requires that a speaker receive permission to engage in speech, the official charged with granting the permission must be provided specific standards on which to base his or her decisions. Without such standards, every application of the regulation 'creates an impermissible risk of suppression of ideas.'" *Lewis v. Wilson*, 253 F.3d 1077, 1080 (8th Cir. 2001) (quoting *Forsyth Cty.*, 505 U.S. at 129).

Defendants' Speech Zone Policy lacks any such protections. Nothing prevents officials from:

- allowing certain students to speak in the speech zones while denying other viewpoints access to the speech zones, Compl. ¶¶ 81-82;
- allowing certain students to speak outside the zones while denying other viewpoints access to those same venues, Compl. ¶¶ 83-84;
- selectively allowing students to speak when the speech zones are closed, Compl. at Ex. 3;
- selectively allowing certain students to set up a stand, table or booth, in the speech zones while denying other viewpoints the right to do the same, Compl. ¶¶ 87-88;
- denying requests that meet all eight considerations due to other factors, Compl. at Ex. 3., including "the whim of the administrator," *Forsyth Cty.*, 505 U.S. at 133; or
- modifying the zones to benefit favored speakers, Defs.' MTD Br. 3 n.1.

Defendants say no one abused this discretion. Defs.' MTD Br. 16. But "the success of a facial challenge on the grounds that [a policy] delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content- [or viewpoint-] based manner, but whether there is anything in the [policy] preventing him from doing so." *Forsyth Cty.*, 505

U.S. at 133 n.10; *accord Lakewood*, 486 U.S. at 770 n.11 ("Facial attacks . . . are not dependent on the facts surrounding any particular permit denial.").

Defendants argue that the policy does not "allow the denial or revocation of a permit on the basis of content." Defs.' MTD Br. at 16. But it does nothing to limit discretion or to provide the required "*precise* and *objective*" criteria. *Lady J. Lingerie*, 176 F.3d at 1362. The University of Houston similarly said it "considers only content-neutral factors when applying [the challenged policy]," but the court rejected this as it "presumes [officials] will act in good faith and adhere to standards absent from the [policy]'s face," which "'is the very presumption that the doctrine forbidding unbridled discretion disallows.'" *Pro-Life Cougars*, 259 F. Supp. 2d at 584 (quotation omitted). Defendants' argument deserves a similar fate.

### 2. Defendants' Speech Zone Policy is an illegal prior restraint in areas that are at least unlimited designated public fora.

In evaluating Defendants' Speech Zone Policy, the Court must (1) determine if Plaintiffs' speech is protected, (2) "identify the nature of the forum," and (3) assess whether the restrictions "satisfy the requisite standard." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985). Plaintiffs pleaded clearly established First Amendment violations under this analysis.

As "students enjoy First Amendment rights of speech and association on the [college] campus, . . . the denial . . . of use of campus facilities for meetings and other appropriate purposes must be subjected to the level of scrutiny appropriate to any form of prior restraint." *Widmar*, 454 U.S. at 267 n.5 (quotation omitted). The Eighth Circuit describes a prior restraint as "any

permit requirement [that] gives 'public officials the power to deny use of a forum in advance of actual expression.'" *United States v. Kistner*, 68 F.3d 218, 221 n.7 (8th Cir. 1995) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 783 n.5 (1989)). Under the Speech Zone Policy, students need a permit to speak anywhere on campus, inside or outside of the speech zones. Compl. ¶¶ 81, 83. This is a prototypical prior restraint.

As prior restraints censor speech before it occurs, there is a "heavy presumption" against their constitutionality. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *Bowman v. White*, 444 F.3d 967, 980 (8th Cir. 2006). They "are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). To carry their "heavy burden," *Healy*, 408 U.S. at 184, Defendants must show their policy is a reasonable time, place, and manner regulation (*i.e.*, is content-neutral, is "narrowly tailored to serve a significant governmental interest," and "leave[s] open ample alternatives for communication"). *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 864 F.3d 905, 913 (8th Cir. 2017) (citation omitted). It need fail only one of these to be unconstitutional; it fails them all.

### a. The First Amendment protects Plaintiffs' expression.

Plaintiffs desire to engage in time-honored forms of expression that the First Amendment clearly protects: "oral communication and literature distribution" discussing issues such as "liberty and freedom." Compl. ¶¶ 115, 124. These classic forms of speech lie at the very "foundation of free

government by free men." *Schneider v. New Jersey*, 308 U.S. 147, 161 (1939); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995) (discussing protections for handbilling). Defendants do not dispute that Plaintiffs were engaging in protected expression when Defendants enforced the Speech Zone Policy and ordered them to leave the area.

### b. Defendants' Speech Zone Policy restricts speech in areas that are at least unlimited designated public fora.

"[T]he extent to which [Defendants] may limit access depends on whether the forum is public or nonpublic." *Cornelius*, 473 U.S. at 797. The Eighth Circuit recognizes traditional, unlimited designated, limited designated, and nonpublic fora. *Bowman*, 444 F.3d at 974-76.[6] For purposes of this motion, Defendants admit that the Speech Zone Policy restricts speech in areas that are at least unlimited designated public fora. Defs.' MTD Br. 12-13.[7] But Defendants incorrectly argue that the policy's restrictions are identical to the policy restrictions upheld in *Bowman*. Defs.' MTD Br. 15-17. *Bowman* is not controlling for two reasons.

First, in *Bowman* the Court found "no evidence that the Policy is anything but content neutral" and thus applied intermediate scrutiny. *Bowman*, 444

---

[6]   In traditional and designated public fora, content-based rules must "be necessary to serve a compelling government interest and be narrowly drawn to achieve that interest," *Bowman*, 444 F.3d at 975 (citation omitted); content-neutral ones must be "narrowly tailored to serve a significant government interest and leaves open ample alternative channels of communication." *Id.* Elsewhere, restrictions must be reasonable and viewpoint neutral. *Id.* at 976.
[7]   Defendants erroneously argue that the Court's analysis should be limited to the outdoor areas other than the speech zones. Defs.' MTD Br. 12. However, Plaintiffs' Complaint clearly challenges the policy as an unconstitutional prior restraint as it requires permission to speak anywhere on campus, both inside and outside the speech zones. Compl. ¶¶ 144-46.

F.3d at 980. In contrast, Defendants Speech Zone Policy is not content-neutral. Rather, it is viewpoint-based because it grants unbridled discretion to Defendants and thus is unconstitutional in any forum. *See supra* Part IV.A.1. Second, the prior permit and 72 hour notice requirement in *Bowman* did not apply to students and thus the court held that the restrictions satisfied intermediate scrutiny. *Id.* at 972. Here, Defendants' Speech Zone Policy applies to all students and requires them to obtain a permit 72 hours prior to speaking anywhere outside the speech zones (i.e., 99% of campus) and before speaking in the speech zones. As discussed in more detail below, these two differences are material and fatal.

### c.  The Speech Zone Policy is content-based.

To be a reasonable time, place, and manner restriction, Defendants' policy must be content neutral. *Bowman*, 444 F.3d at 980. The flaws that render them viewpoint-based make them content-based because viewpoint discrimination is "an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

"Even a facially content-neutral . . . regulation may not vest public officials with unbridled discretion over permitting decisions." *Burk v. Augusta-Richmond Cty.*, 365 F.3d 1247, 1256 (11th Cir. 2004) (citing *Shuttlesworth*, 394 U.S. at 150-151). *See also Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2228 (2015) (finding content discrimination despite "an innocuous justification").

"Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment."

*Regan v. Time, Inc.*, 468 U.S. 641, 648–49 (1984). Policies that lack protections against viewpoint discrimination lack any against content discrimination. *See supra* Part IV.A.1. Thus, they are content-based and face strict scrutiny, and "it is the rare case in which . . . a law survives strict scrutiny." *Republican Party of Minn. v. White*, 416 F.3d 738, 749 (8th Cir. 2005) (citation omitted).

### d. Defendants' Speech Zone Policy fails intermediate scrutiny.

Defendants' Speech Zone Policy fails even the intermediate scrutiny for content-neutral rules, where Defendants must show that it is narrowly tailored to serve a significant governmental interest and that they leave open ample alternative means of communication. *Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir. 1998). That is, it must "target[] and eliminate[] no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (citation omitted).

"Although a governmental restriction does not have to be the least restrictive or least intrusive means of regulation, it may not, under well-established constitutional standards, curtail substantially more speech than is necessary to accomplish its purpose . . . ." *Krantz*, 160 F.3d at 1222. Too often "silencing the speech is . . . the path of least resistance. But by demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily 'sacrific[ing] speech for efficiency.'" *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014) (citation omitted). Defendants' Speech Zone Policy flunks this test.

### i. Defendants' Speech Zone Policy contains five features that flunk intermediate scrutiny.

Courts have found five aspects of Defendants' Speech Zone Policy to be not narrowly tailored, often dismissing Defendants' interests. First, as Ms. Hoggard knows, this policy prevents even a single student and her guest from talking with other students about her student group outside the speech zones. Compl. ¶¶ 100-14. To speak anywhere on campus outside the speech zones (i.e., 99% of campus), she must seek a permit three days before. *Id.* ¶ 83. In *Douglas v. Brownell*, the Eighth Circuit expressed "doubt whether applying the permit requirement to [groups of ten or more persons] is sufficiently tied to the City's interest in protecting the safety and convenience of citizens who use the public sidewalks and streets." 88 F.3d 1511, 1524 (8th Cir. 1996). Similarly, the Eleventh Circuit has recognized that many courts invalidated "permitting requirements because their application to small groups rendered them insufficiently tailored." *Burk*, 365 F.3d at 1255 n.13; *see, e.g.*, *Knowles v. City of Waco*, 462 F.3d 430, 436 (5th Cir. 2006) ("[O]rdinances requiring a permit for demonstrations by a handful of people are not narrowly tailored to serve a significant government interest."); *Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608 (6th Cir. 2005) ("Permit schemes and advance notice requirements that potentially apply to small groups are nearly always overly broad and lack narrow tailoring.").

Second, this policy "effectively ban[s]" "a significant amount of spontaneous speech," violating the First Amendment. *Watchtower*, 536 U.S. at 167–68. This is often "the most effective kind of expression," but permit procedures prevent

27

"immediate speech" from responding to "immediate issues." *Grossman v. City of Portland*, 33 F.3d 1200, 1206 (9th Cir. 1994). Often, timing is of the essence. *Shuttlesworth*, 394 U.S. at 163 (Harlan, J. concurring) ("[W]hen an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all."). But at ASU, there is no place for spontaneous speech.[8] Students must get a permit to speak anywhere, anytime on campus—whether outside the zones (*i.e.*, 99% of campus), Compl. ¶ 83, or inside them. *Id.* ¶ 81. They cannot address time-sensitive matters spontaneously. *Id.* ¶ 118; *Williams*, 2012 WL 2160969, at *6 (noting "expansive permitting schemes place an objective burden" on free speech and "essentially ban spontaneous speech").

Third, Defendants limit almost all student speech to seven tiny zones (*i.e.*, 1% of campus). Compl. ¶¶ 78-79. Courts considering whether Defendants' asserted interests justify such limits have found similar policies are not narrowly tailored. *Roberts*, 346 F. Supp. 2d at 863 (declaring a "free speech gazebo" unconstitutional because the "University's interest in an orderly administration of its campus and facilities . . . does not trump the interest of its students . . . in having adequate opportunities and venues available for free expression"); *Khademi*, 194 F. Supp. 2d at 1034–35 (striking leafleting ban inside and outside college buildings as "not narrowly tailored" to preventing

---

[8]  *Watchtower*, 536 U.S. at 165–66 ("It is offensive—not only to the values protected by the First Amendment, but to the very notion of a free society—that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so."); *Thomas v. Collins*, 323 U.S. 516, 539 (1945) ("As a matter of principle a requirement of registration in order to make a public speech would seem generally incompatible with an exercise of the rights of free speech and free assembly.").

litter and protecting students from solicitors); *Burbridge*, 74 F. Supp. 2d at 950–51 (restricting certain student events to three "preferred areas" does not advance "a single interest, much less a significant one"); *Williams*, 2012 WL 2160969, at *7 (same for limiting student speech to one area).

Fourth, Defendants require students to seek a permit three days before using any area outside the speech zones, Compl. ¶ 83, going beyond the policy struck down at Texas Tech. *Roberts*, 346 F. Supp. 2d at 869 (requiring "student[s] to acquire a permit at least two business days before" speaking "outside of the designated free-speech zones but in areas of the campus that are public forums nonetheless"). Like Defendants, Defs.' MTD Br. 14, Texas Tech said this was needed to "preserv[e] an environment suitable for classroom instruction and library study," coordinate events, and address "noise and safety" concerns. *Roberts*, 346 F. Supp. 2d at 869. But it was not narrowly tailored "because it sweeps too broadly in imposing a burden on a substantial amount of expression that does not interfere with any significant interests of the University." *Id.* at 870; *Williams*, 2012 WL 2160969, at *6–7 (finding three-day notice period not narrowly tailored to having a "peaceful and safe" campus). It "is simply unfathomable that a [ASU] student needs to give the [College] advance notice of an intent to [leaflet]. *There is no danger to public order arising out [of] students walking around campus [leafleting]*." *Williams*, 2012 WL 2160969, at *7 n.5.

Fifth, the Speech Zone Policy allows students to distribute written materials in certain outdoor areas of campus but prohibits students from

speaking while doing so. Compl. ¶¶ 85-86. Defendants do not even attempt to justify why the policy would allow a single student to distribute literature in a certain area but would prohibit that same student from simply speaking with other students in that same area. This type of arbitrary distinction does not further any significant interest of ASU. And is certainly not narrowly tailored to achieve any such interest.

Defendants vainly defend their policy with *Bowman*. Defs.' MTD Br. 14-17. *Bowman* is not controlling for two reasons. First, the permit requirement in *Bowman* did not apply to students. It only applied to persons unaffiliated with the university. *Bowman*, 444 F.3d at 981. Second, the *Bowman* decision is based on the Court's finding that the "University has a significant public safety interest in requiring a permit because of the time and resources necessary to accommodate the crowds that Bowman attracts." *Id.* The Court based its finding on the following facts: (i) the majority of plaintiff's permit requests listed estimated attendance between 50 and 100 people; (ii) the actual attendance was as high as 200 people; and (iii) plaintiff has "demonstrated the capacity to attract a crowd and disrupt the unique educational environment." *Id.* The *Bowman* Court held that "[u]nder these circumstances, the permit requirement is justified." *Id.*

None of those factors are present here. Instead, Defendants' Speech Zone Policy applies to students as well as outside parties. And it requires all students to obtain a permit 72 hours in advance to speak anywhere on campus, even for a single student. Compl. ¶ 83. Defendants enforced the Speech Zone

Policy against Ms. Hoggard and her guest even though they were not: (i) attracting a crowd, (ii) blocking any entrance or exit to any buildings, (iii) impeding access to the buildings or parking lots, or (iv) blocking the free flow of traffic on the sidewalks. *Id.* at ¶ 107. Accordingly, Defendants' Speech Zone Policy is not narrowly tailored because it requires a single student to obtain a permit to speak 72 hours in advance in virtually all public places on campus.

### ii. Defendants' asserted interests do not satisfy intermediate scrutiny.

First, Defendants cite their educational mission, Defs.' MTD Br. 14, as if this did not include fostering a robust marketplace of ideas where students engage one another. Even so, a college's "institutional mission . . . does not exempt its actions from constitutional scrutiny." *Widmar*, 454 U.S. at 268. "[T]he broad argument . . . that . . . public [high] school officials [may] censor any student speech that interferes with a school's 'educational mission' . . . strikes at the very heart of the First Amendment." *Morse v. Frederick*, 551 U.S. 393, 423 (2007) (Alito, J. concurring); *Gregoire v. Centennial Sch. Dist.*, 907 F.2d 1366, 1374 (3d Cir. 1990) (finding "educational mission" is "so vague" as to give "virtually unlimited discretion"). Even at high school, "[w]here students' expressive activity does not materially interfere with a school's vital educational mission, and does not raise a realistic chance of doing so, it may not be prohibited simply because it conceivably *might* have such an effect." *Holloman*, 370 F.3d at 1274. Defendants' policy addresses this same contingency, and they have "*less leeway* in regulating student speech." *DeJohn*, 537 F.3d at 316.

31

Next, Defendants insist they must "ensure public safety." Defs.' MTD Br. 14. Requiring a permit for all student speech anywhere on campus is not narrowly tailored to fraud or crime prevention. *Watchtower*, 536 U.S. at 165–69.

Last, Defendants assert their interest in fostering a diversity of uses for University resources. Defs.' MTD Br. 14. But Defendants have not put forth any argument demonstrating how requiring a single student to obtain a permit to speak with other students on campus is narrowly tailored to achieve that interest.

In short, Defendants' Speech Zone Policy is a restriction on First Amendment rights of breathtaking scope and cannot be justified by a significant government interest. It is not narrowly tailored; it is an illegal prior restraint.

### e.  The Speech Zone Policy fails strict scrutiny.

Being content-based, *supra* Part IV.A.2.c, the Speech Zone Policy must satisfy "strict scrutiny," *Bowman*, 444 F.3d at 975, (*i.e.*, "further[] a compelling interest and [be] narrowly tailored to [it]," *Reed*, 135 S. Ct. at 2231). "A narrowly tailored regulation is one that actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive), does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative)." *White*, 416 F.3d at 751. As the Speech Zone Policy is not the least-restrictive alternative, *supra* Part IV.A.2.d, it is not narrowly

tailored. "[I]t is the rare case in which a law survives scrutiny," and the Speech Zone Policy is not one of them. *Id.* at 749.

### f. Defendants' Speech Zone Policy does not provide ample alternative means of communication.

To pass intermediate scrutiny, Defendants' Speech Zone Policy must also "leave open ample alternative channels of communication." *Ward*, 491 U.S. at 802; *Bell v. City of Winter Park*, 745 F.3d 1318, 1322 (11th Cir. 2014) (same). Relevant factors include whether the speaker can "reach the intended audience," the location is "part of the expressive message," there is "opportunity for spontaneity" in the alternative location, and the alternatives are more costly or less convenient. *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1025 (9th Cir. 2009).

Defendants' Speech Zone Policy requires students to obtain a permit before speaking anywhere on campus. Thus, the policy does not leave open *any* alternative channel of communication for students to speak with other students on campus. Defendants claim the Speech Zone Policy does not apply to "casual or everyday conversations." Defs.' MTD Br. 2. But they do not explain how officials (or students) are to distinguish permissible conversing from impermissible public speaking, and the Complaint pleads they enforced this policy to bar Ms. Hoggard from conversing outside the speech zones. Compl. ¶¶ 100-14. These facts—which must be accepted, *Braden*, 588 F.3d at 594—show this alternative does not exist.

Even if Defendants' Speech Zone Policy were content-neutral, it would have to satisfy all three criteria for time, place, and manner restrictions to be valid. As it fails all three, Plaintiffs pleaded plausible free speech claims.

### g. The Speech Zone Policy lacks the protections required of content-based prior restraints.

As a content-based prior restraint, Defendants' Speech Zone Policy must also satisfy the procedural requirements of *Freedman v. Maryland*, 380 U.S. 51 (1965). *Walker v. Wegner*, 624 F.2d 60 (8th Cir. 1980). They "can be imposed only for a specified brief period" of time, "expeditious judicial review . . . must be available," and "the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 321 (2002).

The Speech Zone Policy applies to the entire campus at all times, even to student conversations. Compl. ¶¶ 77-86. It has no time limits for granting permits and gives Defendants Stripling and Spack the final word, without requiring an explanation. *Id.* ¶¶ 81-84, 90. The Speech Zone Policy contains none of the procedural safeguards required by *Freedman*. Thus, it is an unconstitutional, content-based, prior restraint.

### h. Defendants' Speech Zone Policy fails the scrutiny for nonpublic fora.

The Speech Zone Policy imposes restrictions that have been unconstitutional, even in nonpublic fora, for at least thirty years. In the 1980s, Los Angeles International Airport banned expressive activities in its terminals. *Jews for Jesus*, 482 U.S. at 570–71. Defendants do the same. They ban speech

on the entire campus unless they grant permission to speak. Compl. ¶¶ 73-89. No one can speak, even in the speech zones, without permission. *Id.* Like LAX's, Defendants' policy "reaches the universe of expressive activity, and, by prohibiting *all* protected expression, purports to create a virtual 'First Amendment Free Zone'" on campus. *Jews for Jesus*, 482 U.S. at 574; Compl. ¶¶ 73-89. Such bans are unconstitutional in any forum: "We think it is obvious that such a ban cannot be justified even if LAX were a nonpublic forum because no conceivable governmental interest would justify such an absolute prohibition of speech." *Jews for Jesus*, 482 U.S. at 575.[9]

A policy unreasonable in airports cannot be reasonable for students in the "marketplace of ideas," *Cornelius*, 473 U.S. at 789 (noting "reasonableness must be assessed in the light of the purpose of the forum"), especially when Defendants have discretion to grant or deny permits. *See supra* Part IV.A.1.

### 3. Defendants' Speech Zone Policy is overbroad as it restricts a substantial amount of protected speech.

For over forty years, it has been clearly established that a law is overbroad if it "penaliz[es] a substantial amount of speech that is constitutionally protected." *Forsyth Cty.*, 505 U.S. at 130. "[A] law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Josephine Havlak*, 864 F.3d at 912 (quotation omitted).

---

[9]   *Accord Lee v. Int'l Soc'y for Krishna Consciousness, Inc.*, 505 U.S. 830, 831 (1992) (striking leafleting ban in nonpublic fora inside airport (while allowing it on sidewalks outside) as First Amendment violation); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 687, 685–92 (1992) (O'Connor, J. concurring) (finding the ban unreasonable).

Defendants' Speech Zone Policy is overbroad because it penalizes a substantial amount of constitutionally protected speech. *See supra* Part II (noting amount of speech curtailed); Part IV.A.1 (discussing unbridled discretion); Part IV.A.2.d.i (discussing lack of tailoring).

### B. Defendants' Speech Zone Policy violates Plaintiffs' clearly established Fourteenth Amendment Right to Due Process.

A regulation is void-for-vagueness if it "forbids or requires the doing of an act in terms so vague that [students] of common intelligence must necessarily guess at its meaning and differ as to its application." *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1308 (8th Cir. 1997). The void-for-vagueness doctrine also "prevents arbitrary or discriminatory enforcement." *Id.* In analyzing a policy under this doctrine, the court must first "determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Id.* As indicated by Defendants' enforcement of the Speech Zone Policy against Plaintiffs, the policy clearly reaches a substantial amount of constitutionally protected conduct.

It is clearly established that a policy is vague if it fails to "give [students] of ordinary intelligence a reasonable opportunity to know what is prohibited," lacks "explicit standards for those who apply [it]," or chills constitutional freedoms. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972); *accord City of Chi. v. Morales*, 527 U.S. 41, 56 (1999). Here, "a more stringent vagueness test should apply" as these policies "interfere[] with the right of free speech." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *accord Stephenson*, 110 F.3d at 1308-09.

Defendants' Speech Zone Policy grants five layers of unbridled discretion. *See supra* Part IV.A.1.a. So students cannot know how to structure their requests, and Defendants can grant permits in a discriminatory way. Defendants argue that the terms "speaking, demonstrating, and other forms of expression" are not vague or ambiguous. Defs.' MTD Br. 20-21. They argue that the policy only applies to the giving of a speech or a demonstration and does not apply to "casual, everyday conversation." *Id.*

The allegations of the Complaint demonstrate otherwise. The Complaint alleges that while Ms. Hoggard and her guest were "engaging students in conversation" Defendants stated that "they were in violation of the Speech Zone Policy because they were talking with students outside of the speech zones." Compl. ¶¶ 108-09. That Defendants and their counsel differ on whether the policy limits conversations confirms the vagueness. *Williams*, 2012 WL 2160969, at *7–8 (finding speech zone vague as it lacked "objective criteria" and "the University and its own employees have different understandings of [its] terms").

"[Students] of common intelligence must necessarily guess at [the policy's] meaning"; officials will "necessarily . . . differ as to [their] application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). The policy is clearly vague.

<u>CONCLUSION</u>

Plaintiffs pleaded facts showing Defendants' Speech Zone Policy violates their clearly established rights, as articulated by the Supreme Court and the

37

Eighth Circuit. As those facts must be "accept[ed] . . . as true and constru[ed]" in their favor, Defendants' motion should be denied. *Braden*, 588 F.3d at 594.

Respectfully submitted this 28th day of February 2018,

*/s/ Tyson C. Langhofer*
Tyson C. Langhofer*
Arizona Bar No. 032589
**Alliance Defending Freedom**
15100 N. 90th ST.
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Fax: (480) 444-0028
tlanghofer@ADFlegal.org

David A. Cortman
Georgia Bar No. 188810
**Alliance Defending Freedom**
1000 Hurricane Shoals Rd. NE,
Suite D-1100
Lawrenceville, Georgia 30043
Telephone:  (770) 339–0774
Fax:  (770) 339–6744
dcortman@ADFlegal.org

Ethan C. Nobles
Arkansas Bar No. 95048
**Nobles Law Firm**
149 S. Market
Benton, AR 72015
Telephone: (501) 794-9742
Fax: (501) 641-7057
ethan @NoblesLawFirm.com

* Admitted *pro hac vice*.

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February, 2018, I electronically filed a true and accurate copy of the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to the following attorneys of record:

> Delena C. Hurst
> Associate General Counsel
> Arkansas State University System
> 501 Woodland Dr., #600
> Little Rock, AR 72201
> Telephone: (501) 660-1009
> dhurst@asusystem.edu
>
> Rodney P. Moore
> Wright, Lindsey & Jennings LLP
> 200 West Capitol Avenue, Suite 2300
> Little Rock, AR 72201
> Telephone: (501) 371-0808
> rpmoore@wlj.com
>
> Jeffrey W. Puryear
> Ryan M. Wilson
> Womack Phelps Puryear Mayfield & McNeil, P.A.
> P.O. Box 3077
> Jonesboro, AR 72403
> Telephone: (870) 932-0900
> jpuryear@wpmfirm.com
> rwilson@wpmfirm.com
>
> *Attorneys for Defendants*

*/s/ Tyson C. Langhofer*
Tyson C. Langhofer
*Attorney for Plaintiffs*