IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**TURNING POINT USA AT ARKANSAS
STATE UNIVERSITY** and **ASHLYN HOGGARD**,     **PLAINTIFFS**

v.                  Case No. 3:17-cv-00327 (JLH/JTR)

The Trustees of Arkansas State University—
**RON RHODES, et al.**
                                               **DEFENDANTS**

## DEFENDANTS' REPLY
## IN SUPPORT OF THEIR MOTION TO DISMISS

Plaintiffs miss the mark in their response. They fail to distinguish in any material respect the controlling case of *Bowman v. White*, 444 F.3d 967 (8th Cir. 2006), which has confirmed the constitutionality of the exact policy provisions at issue. And they ignore—and misstate—the contents of ASU's Freedom of Expression Policy ("the Policy") (Doc. 1-2 & 1-3). For these reasons, ASU's motion to dismiss should be granted, and plaintiffs' Complaint should be dismissed.

**I.**     **The *Bowman* decision controls this case.**

This case is materially indistinguishable from *Bowman v. White*, 444 F.3d 967 (8th Cir. 2006), which upheld the constitutionality of substantively identical policy provisions of the University of Arkansas at Fayetteville. Plaintiffs' three claimed differences between ASU's Policy and the *Bowman* policy are either not true or do not matter. (Doc. 16, at 12-13) First, as discussed below, ASU's Policy is content-neutral, just as the University of Arkansas policy in *Bowman*. Plaintiffs' claim otherwise is simply not true. Second, ASU's Policy applies equally to students and non-students alike, and the First Amendment authorizes this equal treatment. The fact that the

Policy grants non-students the same free speech rights as students simply does not matter. And third, the apparent ability of the *Bowman* plaintiff—a single individual—to attract large crowds actually supports the constitutionality of ASU's Policy and provides an historical and empirical basis for ASU to maintain the same requirements approved in the *Bowman* case. In other words, it is illogical to require ASU to wait until a harmful event occurs before it may enact an otherwise constitutional policy.

It is true that ASU's Policy applies equally to students and non-students alike. But that circumstance has no bearing on the analysis. No case cited by plaintiffs indicates that a registered student at a public university is entitled to greater protection under the First Amendment than a non-student.[1] In fact, plaintiffs admit in their response that the First Amendment applies equally to students and non-student citizens. (Doc. 16, at 25) ("[I]t has been clearly established for decades that the First Amendment protects students on campus to the same degree it protects citizens off campus."). Quite simply, student status does not matter.

Further, plaintiffs' citations to decisions of courts from other circuits regarding different policies of other schools are not helpful or controlling. The *Bowman* opinion controls this case. *Bowman* approved a 72-hour permit requirement for speeches and other expression on the campus of a public university in Arkansas. *Bowman*, 444 F.3d at 980-82. These requirements were approved as constitutional not just for elaborate demonstrations or large groups of speakers, but for a single individual speaker. *Id.* It was also approved over the plaintiff's objection that the

---

[1] Plaintiffs are also plainly incorrect in their characterization of the *Bowman* policy. The *Bowman* policy distinguished between "University Entities" and "Non-University Entities." *Bowman v. White*, 444 F.3d 967, 972 (8th Cir. 2006). Individual students are included in the definition of "Non-University Entities" in the current version of that policy. Thus, the policy provisions at issue in *Bowman* apply equally to individual students and non-students alike. *Bowman* continues to be directly on point and dispositive of this case.

policy effectively barred him from engaging in constitutionally protected spontaneous speech. *Id.* at 982. These same arguments are raised by plaintiffs in this case, (Doc. 16, 37-40), and these same arguments should be rejected as they were in *Bowman*.

ASU's Policy also leaves open ample alternative channels for communication. If a speaker wants to speak or demonstrate on less than 72 hours notice, all she has to do is email or call the Director of Student Development and Leadership to schedule use of one of the Freedom of Expression Areas. The Policy does not impose any required lead time for such a request. Further, nothing in the Policy restricts individuals from publicizing their views through other means. *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 695 (8th Cir. 2012). Letters to the editor or articles in ASU's campus newsletter or the internet are possible. *Id.* The speaker could arrange for interviews on student-run campus television, ASU-TV. Or, the speaker could utilize non-University property adjacent to campus. In the appeal brief filed by the plaintiff in *Bowman*, he made the exact same arguments on this point that plaintiffs make in this case, (Applt. Br. at 66-67), and the Eighth Circuit rejected those arguments, *Bowman*, 444 F.3d at 981.

There is no constitutional infringement in this case. ASU's Freedom of Expression Policy is substantively identical to the policy provisions approved as constitutional in *Bowman*. Thus, the Court should find that defendants are entitled to immunity and dismiss plaintiffs' complaint with prejudice.

## II.     ASU's Freedom of Expression policy.

Plaintiffs misstate provisions of the Policy and in the process, obscure the truth. First, the Policy is clearly content-neutral. Second, the Policy does not limit speech only to the Freedom of Expression Areas; the Policy specifically allows speeches, demonstrations, marches, and other forms of expression both inside and outside the Freedom of Expression Areas. Third, ASU

administrators do not have "unlimited" or "unbridled" discretion; the Policy expressly requires them to consider requests only in conjunction with the significant government interests and objective factors listed in the Policy.

### A. The Policy prohibits ASU administrators from making decisions based on the content or viewpoint of speech.

There is no question that the Policy is content and viewpoint-neutral. The Policy expressly states as much in six (6) separate places: three times in the ASU System Policy (Doc. 1-2, at 2-3), and three times in the ASU Jonesboro Policy (Doc. 1-3, at 2-3). Plaintiffs spend much time and effort talking about the policies of other universities in cases outside the Eighth Circuit, but they fail to acknowledge the relevant parts of the Policy in this case that specifically require content neutral decisions. The Policy on its face makes no distinction about the messages that may be conveyed by speakers. The plain meaning of the Policy's text controls as long as it is neutral on its face. *Phelps-Roper v. Nixon*, 545 F.3d 685, 691 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012). Plaintiffs cannot deny this inescapable truth, and the Court should reject plaintiffs' argument because their position is directly contrary to the face of the Policy. *See Pursley v. City of Fayetteville, Ark.*, 820 F.2d 951, 955 (8th Cir. 1987) ("The ordinance makes no distinctions based on the message that the picketers convey, and thus clearly passes this step in the analysis.").

Further, the Policy *mandates* content-neutral decisions. There is no discretion on this issue. The Policy uses the terms "must" and "will" (e.g. "such opportunities *must* . . . adhere to the basic principle that the university *will* remain neutral"; "such plans *will* be considered in accordance with the principal of content neutrality" (Doc. 1-3, at 2-3)). The Eighth Circuit has characterized the terms "must" and "will" as "language of an unmistakably mandatory character." *Parker v. Corrothers*, 750 F.2d 653, 656 (8th Cir. 1984) (quoting *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct.

864, 74 L. Ed. 2d 675 (1983) and discussing use of the terms "shall," "will," and "must").  The Policy explicitly sets forth eight objective factors related to significant government interests and does not allow for content or viewpoint discretion on the part of administrators. (Doc. 1-3, at 3-4).  Indeed, the Policy expressly *prohibits* ASU administrators from considering the content of any speech, demonstration, or written material when evaluating a request to schedule use of space.

Plaintiffs attempt to save their facial challenge to the Policy by manufacturing fictional scenarios where they claim that decisions could possibly be based on the content of a speaker's message. (Doc. 16, at 31)  However, the six hypotheticals described by plaintiffs in their Section IV.A.1.b. are just that: hypothetical.  Each of those fictional scenarios is prohibited by the face of the Policy and its express requirement that ASU and its administrators consider requests without regard to the content or viewpoint of expression.  (Doc. 1-2, at 2-3; Doc. 1-3, at 2-3)  "The fact that one can conceive of an impermissible application of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Josephine Havlak Photographer v. Village of Twin Oaks*, 864 F.3d 905, 912 (8th Cir. 2017) (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1157 (8th Cir. 2014)).  Plaintiffs stubbornly refuse to yield to the truth that ASU's Policy is content-neutral.  Despite all the possible scenarios that plaintiffs say could occur, the fact remains that they did not happen in this case, and the actions of ASU's administrators were content-neutral at every point.

The Policy contains the exact type of "affirmative protection for viewpoint neutrality" that plaintiffs claim is necessary. (Doc. 16, at 31) (quoting *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 235 (2000)).  This "affirmative protection" takes the form of Policy provisions expressly requiring content-neutral decisions.  Plaintiffs cannot escape this truth.

### B. The Policy allows speech both inside and outside the Freedom of Expression Areas.

Nothing in the Policy prohibits use of the generally accessible outdoor areas of campus for freedom of expression purposes. Again, the Policy describes two categories of campus space available for freedom of expression: (a) the Freedom of Expression Areas; and (b) other areas of the campus. (Doc. 1-2, at 2; Doc. 1-3, at 2) Both categories of space—including those outside the Freedom of Expression Areas—are available for freedom of expression. The only difference between the two categories is the requirements imposed on their use.

The only requirement for an individual to use the Freedom of Expression Areas is to schedule use of the area through the Director of Student Development and Leadership to ensure the particular area is not already booked or in use. (Doc. 1-3, at 2) There are no other requirements. A simple email or phone call is all it takes. Plaintiffs again attempt to obscure the truth by claiming that there are more requirements attached to use of the Freedom of Expression Areas. (Doc. 16, at 38-39) As the Policy clearly states, however, the requirements for permission and 72-hours notice apply only to use of space outside the Freedom of Expression areas. Plaintiffs' contrary claim directly contradicts the express terms of the Policy, and the Court should reject plaintiffs' contention. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010) (rejecting plaintiff's unsupported and unreasonable interpretation of an exhibit to the complaint when analyzing a motion to dismiss under Rule 12(b)(6)).

The same fate should befall plaintiffs' claim that the Policy somehow allows distribution of written materials in certain areas but prohibits speech at those same locations. (Doc. 16, at 21, 39-40) Again, the Policy expressly provides that space outside the Freedom of Expression Areas is available for use, which necessarily includes all the areas for distribution of written materials. (Doc. 1-2, at 2; Doc. 1-3, at 2) There is simply no truth to plaintiffs' contention.

In sum, free expression on ASU's campus is not limited to the Freedom of Expression Areas. The Policy allows for free expression both inside and outside the Freedom of Expression Areas. Plaintiffs' arguments otherwise (Doc. 16, at 38-40) are contrary to the express terms of the Policy, and the Court should reject them.

### C. The Policy contains specific, objective criteria to guide administrators.

Similarly, plaintiffs' claim that the Policy does not contain standards to guide an administrator's decision in evaluating a request has no merit and thus fails. (Doc. 16, at 28-30) It is true that where a policy requires a speaker to receive permission to engage in speech, the official charged with granting the permission must be provided specific standards on which to base his or her decisions. *Lewis v. Wilson*, 253 F.3d 1077, 1080 (8th Cir. 2001). However, ASU's Policy amply satisfies this standard because it lists three (3) significant government interests and eight (8) specific and objective criteria to guide administrators' decisions. (Doc. 1-3, at 3-4) These objective criteria include prohibiting "interference with educational activities inside or outside of buildings." (Doc. 1-3, at 3) The *Bowman* court specifically approved this type of criteria:

> The University's policy does not delegate overly broad discretion to its officials, nor does it allow the denial or revocation of permits on the basis of content. . . . The Policy grants the University the right to deny or revoke a permit for the use of a space by a Non-University Entity only for limited reasons, such as interference with the educational activities of the institution.

*Bowman v. White*, 444 F.3d 967, 980-81 (8th Cir. 2006). There is no requirement for the Policy standards to be more specific or lay out in metes and bounds the exact measurements constituting "obstruct[tion of] vehicular, pedestrian or other traffic on streets or sidewalks" or other limitations. (Doc. 1-3, at 3) Indeed, "flexibility and elbow room" are preferred over specificity. *Esteban v. Cent. Missouri State College*, 415 F.2d 1077, 1089 (8th Cir. 1969). "[S]chool regulations are not to be measured by the standards which prevail for the criminal law and criminal procedure; . . . the

courts should interfere only where there is a clear case of constitutional infringement." *Id.* at 1089-90.  There is no constitutional infringement here, and ASU's Policy satisfies *Bowman*.

Plaintiffs cited court opinions on different policies of other universities in different jurisdictions (Doc. 16, at 30), but none of those other policies contained the specific guidelines in ASU's Policy.  *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1057 (9th Cir. 2012) (unwritten and previously unenforced policy governing newsbins on campus); *Pro-Life Cougars v. University of Houston*, 259 F. Supp. 2d 575, 577-78 (S.D. Tex. 2003) (policy limiting "potentially disruptive" activities without context or further guidance); and *Smith v. Tarrant County College Dist.*, 670 F. Supp. 2d 534, 536 (N.D. Tex. 2009) (policy with "no guidelines governing the issuance of permits").  Thus, none of those cases is controlling or on point.

Finally, to the extent plaintiffs now attempt to attack the constitutionality of the Policy provision regarding the discretionary use of stands, tables, or booths (Doc. 16, at 18-19, 29 & 31), the Court can easily dispose of this claim because the mere use of a stand, table, or booth is not protected speech under the First Amendment.  *See Jarman v. Williams*, 753 F.2d 76, 77-78 (8th Cir. 1985).  "Obviously not every activity that a citizen wishes to engage in can be categorized as 'speech' for First Amendment purposes.  It is plaintiffs' obligation to demonstrate that the First Amendment applies to the conduct in which they wish to engage." *Id.* at 77 (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 104 S. Ct. 3065, 3069 n.5, 82 L.Ed.2d 221 (1984)).  When certain conduct does not convey a message, it is not entitled to First Amendment protection.  *Id.* at 78.  The only part of the complaint that plaintiffs cite on this issue is paragraphs 87 and 88. (Doc. 16, at 18-19, 29 & 31)  Plaintiffs do not allege anywhere that their use of a table was intended to convey a message.  According to the complaint, their table had a simple utilitarian purpose, not an expressive purpose.  (Doc. 1, at 2 & 12)  Further, plaintiffs fail to cite any case

holding that the use of a stand, table, or booth in this circumstance is protected speech. Plaintiffs bear the burden on this issue, and they have not and cannot satisfy this obligation.

The *Bowman* decision controls this case. At all relevant times, it was clearly established that a public university in Arkansas can maintain a policy that requires permission, 72-hours notice, and allows for content-neutral discretion for use of campus space for freedom of expression purposes. Plaintiffs' claims are barred by immunity and are otherwise wholly without merit.

### III.     Conclusion.

Plaintiffs are attempting create issues where there are none. They misstate provisions of the Policy; they ignore binding and controlling case law from the Eighth Circuit; and they do not have a case that ASU's Policy is anything but proper and constitutional. For these reasons and those discussed in ASU's Motion to Dismiss and supporting brief, the Court should dismiss plaintiffs' complaint with prejudice.

Respectfully submitted,

Delena C. Hurst (2007089)
dhurst@asusystem.edu
Associate General Counsel
Arkansas State University System
501 Woodlane Dr., #600
Little Rock, AR 72201
Ph: (501) 660-1009

-and-

Rodney P. Moore (96134)
rpmoore@wlj.com
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201
Ph: (501) 371-0808

-and-

                        Jeffrey W. Puryear (93109)
                        jpuryear@wpmfirm.com
                        Ryan M. Wilson (2008206)
                        rwilson@wpmfirm.com
                        WOMACK PHELPS
                        PURYEAR MAYFIELD & McNEIL, P.A.
                        P.O. Box 3077
                        Jonesboro, AR 72403
                        Ph: (870) 932-0900


By: /s/ Ryan M. Wilson
      *Attorneys for defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 8th day of March, 2018, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will send electronic notice to the following counsel of record:

Ethan C. Nobles
NOBLES LAW FIRM
149 S. Market
Benton, AR 72015
ethan@NoblesLawFirm.com

Tyson C. Langhofer
ALLIANCE DEFENDING FREEDOM
15100 N. 90th St.
Scottsdale, AZ 85260
tlanghofer@adflegal.org

David A. Cortman
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road NE
Suite D-1100
Lawrenceville, GA 30043
dcortman@adflegal.org
      *Attorneys for plaintiffs*


                        /s/ Ryan M. Wilson
                        Ryan M. Wilson