# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

TURNING POINT USA AT ARKANSAS                                      PLAINTIFFS
STATE UNIVERSITY; and
ASHLYN HOGGARD

v.                              No. 3:17CV00327 JLH

RON RHODES, in his individual and official
capacities as member of the Board of Trustees
of Arkansas State University System; *et al*.                     DEFENDANTS

## OPINION AND ORDER

Ashlyn Hoggard is a student at Arkansas State University in Jonesboro, Arkansas. She wanted to form a Turning Point USA chapter and register it as a student group on campus. In the Fall 2017 semester, Hoggard and a Turning Point employee set up a table with two poster boards about Turning Point on the edge of a large walkway outside the student union. The table was not obstructing any buildings' exits or entrances. They talked with students and encouraged them to join their group. A university employee and campus police officer soon informed Hoggard and her companion that they were violating the campus freedom of expression policy. The officer issued Hoggard's guest a criminal trespass warning and banned her from the entire campus.

The freedom of expression policy governs first amendment expression on all of campus. Document #1-2; Document #1-3. The policy distinguishes between "Free Expression Areas" and all other areas of campus, whether greens, buildings, or sidewalks and roads. *Id.* The policy applies to faculty, staff, students, student organizations, and visitors. *Id.* Free expression areas are generally available for speeches and demonstrations between 8:00 a.m. and 9:00 p.m. Monday through Friday. Document #1-3. Persons wishing to use this space must request permission to use it in advance with the Director of Student Development and Leadership. *Id.* Persons wishing to use other areas of

campus must request permission at least 72 hours in advance with the Vice Chancellor of Student Affairs or the Director of Student Development and Leadership. *Id.* In addition, those wishing to distribute noncommercial written material, such as pamphlets or circulars, may only do so in certain designated areas and only with the permission of the Director of Student Development and Leadership. *Id.* Stands, tables, and booths may only be used in free expression areas to distribute written materials. *Id.* The policy does not require university officials to respond to requests to use free speech areas or other areas within a certain time frame or even at all. *Id.*

Hoggard and the Turning Point organization sued various university officials in their official and individual capacities, alleging that the freedom of expression policy is unconstitutional both facially and as applied to Hoggard and the organization. She says that this policy has unconstitutionally burdened her protected first amendment rights. She wants to discuss Turning Point with students and hand out written materials without needing the approval of the university in advance. The university has now moved to dismiss the complaint on three grounds: standing, sovereign immunity, and qualified immunity.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The Court accepts as true all of the factual

allegations contained in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

The defendants argue that Hoggard and the organization lack standing to challenge the policy because Hoggard never requested nor was denied a permit. They also say that Hoggard and the organization are not challenging the policy's prohibition on the use of stands, tables, or booths , and, therefore, any remedy would not afford them relief. The constitutional requirement of standing does not require Hoggard first to seek and be denied a permit before she will have an injury. *See Bloedorn v. Grube*, 631 F.3d 1218, 1228 (11th Cir. 2011) (rejecting challenge to standing where plaintiff did not seek a permit from the university); *see also Watchtower Bible & Tract Soc'y of New York, Inc. v. Vill. of Stratton*, 536 U.S. 150, 157-58, 122 S. Ct. 2080, 2085, 153 L. Ed. 2d 205 (2002) ("They also explained at trial that they did not apply for a permit because they derive their authority to preach from Scripture."). More fundamentally, Hoggard's alleged injury is not that the permit was denied but that she had to seek a permit in the first place. With respect to the second part of the defendants' standing argument, the complaint makes clear that Hoggard and Turning Point are challenging the policy as a whole and as applied to their conduct when they were asked to leave by the university employee and campus police officer. *See* Document #1 at ¶¶109-18, 129. The plaintiffs have standing.

The defendants next argue that the plaintiffs' claims are barred by sovereign immunity. The defendants acknowledge, though, that claims against state officials in their official capacities for

3

prospective injunctive relief are not barred by sovereign immunity. Hoggard and Turning Point seek prospective injunctive relief against the defendants in their official capacities and seek compensatory damages against the defendants only in their individual capacities. The plaintiffs' claims are not barred by sovereign immunity.

The defendants last argue that they are entitled to qualified immunity because "[t]his case is materially indistinguishable from *Bowman v. White*, 444 F.3d 967 (8th Cir. 2006), which upheld the constitutionality of substantively identical policy provisions of the University of Arkansas at Fayetteville." The defendants' argument relies almost entirely on *Bowman* governing this case. At this stage, the Court cannot say as a matter of law that *Bowman* controls the facts here. First, *Bowman* was decided after a plenary hearing—a proceeding under Federal Rule of Civil Procedure 65(a)(2) wherein a court consolidates the hearing on a preliminary injunction with the trial on the merits—and not at this early stage. Second, the plaintiff in *Bowman* only challenged the policy as applied to his activities. Third, the Eighth Circuit was careful to tailor its analysis to the facts before it in *Bowman*. For example, the court limited its forum analysis to specific locations on Fayetteville's campus, *id.* at 977, 979, and the court also analyzed the university's time, place, and manner restrictions in light of the plaintiff's "demonstrated . . . capacity to attract a crowd and disrupt the unique educational environment." *Id.* at 981.

Perhaps most significantly, the policy at issue in *Bowman* was not made a part of the pleadings and is not before the Court. Other than the description in *Bowman* and the court's as-applied analysis of it, this Court has no way of knowing whether it is materially indistinguishable to Arkansas State's policy. Moreover, even if the policies were materially indistinguishable, the forums are not. The spaces and their historical uses are unique to each campus.

The university's freedom of expression policy requires Hoggard to seek and receive the university's permission before she is allowed to exercise first amendment freedoms on campus. The policy is a prior restraint on her first amendment rights, as interpreted by the Supreme Court, against which there is a "heavy presumption" of unconstitutionality. *See Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130, 112 S. Ct. 2395, 2401, 120 L. Ed. 2d 101 (1992).

At this stage, the Court cannot say that *Bowman* controls this case, nor that this presumption has been rebutted. The defendants' motion to dismiss is DENIED. Document #11.

IT IS SO ORDERED this 23rd day of March, 2018.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE