**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**TURNING POINT USA AT ARKANSAS
STATE UNIVERSITY** and **ASHLYN HOGGARD**,                    **PLAINTIFFS**

**v.**                    Case No. 3:17-cv-00327 (JLH/JTR)

The Trustees of Arkansas State University—
**RON RHODES, et al.**                    **DEFENDANTS**


# DEFENDANTS' REPLY IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT

Arkansas State University's policies and practices are reasonable and constitutional, both facially and as applied to plaintiffs.  Plaintiffs acknowledge or fail to contest several important points that support dismissal: (1) the face of the Policy prohibits officials from considering the content of expression (Doc. 49, at 28); (2) ASU's asserted governmental interests are significant (Doc. 49, at 31-32); and (3) ASU's "well-established practice" can defeat a facial claim of constitutional deficiency (Doc. 49, at 30-31).  Plaintiffs also argue against the Heritage Plaza limited forum designation first by claiming that the restrictions on use do not actually exist, and then by claiming that the purpose of the Student Union is "not rational."  (Doc. 49, at 36-38)  Plaintiffs' positions contradict the undisputed proof.  For these reasons, the Court should grant defendants' Motion for Summary Judgment.

I.        **ASU's Policy and practices do not violate the First Amendment.**

A.        **Heritage Plaza.**

Heritage Plaza patio—more specifically, the location where Hoggard was located on October 11, 2017—is a limited designated forum.  It is designated for use only by registered

student organizations ("RSO's") and University departments, and only RSO's and University departments are permitted to table in that area.  (Doc. 35-4, at p. 74, lines 13 to p. 76, line 15) (Doc. 35-5, at ¶3)  Plaintiffs fail to present any evidence to contest this fact.  In fact, Hoggard acknowledges that Elizabeth Rouse told her about the requirement.  (Doc. 40-19, at ¶22) (Doc. 35-4, at p. 125, lines 17-25)  When such conditions and privileges are granted to RSO's, the Court properly uses a limited public forum analysis.  *See Christian Legal Soc. v. Martinez*, 561 U.S. 661, 130 S. Ct. 2971, 2984-86 (2010).  Application of a stricter level of scrutiny "would, in practical effect, invalidate a defining characteristic of limited public forums—the State may 'reserve them for certain groups.'"  *Id.* at 2985.  *See also Perry Ed. Assn. v. Perry Local Educators Assn.*, 460 U.S. 37, 49, 103 S. Ct. 948 (1983) ("Implicit in the concept" of a limited public forum is the State's "right to make distinctions in access on the basis of speaker identify.");  *Cornelius v. NAACP Legal Def. and Ed. Fund, Inc.*, 473 U.S. 788, 806, 105 S. Ct. 3439 (1985) ("[A] speaker may be excluded from" a limited public forum "if he is not a member of the class of speakers for whose special benefit the forum was created.").

The entirety of Heritage Plaza, including Hoggard's location, is not a free expression area. (Doc. 1-3, at 3) (Doc. 35-6) (Doc. 35-13)  The map (Doc. 35-6) clearly shows the free expression area's location, and Rouse explained this distinction to plaintiffs' counsel in detail.  (Doc. 35-4, at p. 67, line 7 to p. 68, line 22) (Doc. 35-13)  Further, the Policy does not transform every location on campus into an unlimited public forum.  While the face of the Policy does not specifically exclude any area from free expression, it also does not guarantee access to every location regardless of activity or requestor.  The Policy requires "compliance with all applicable . . . university policies, rules and regulations."  (Doc. 1-3, at 4)  If a certain location, such as Heritage Plaza patio, has conditions on use, the Policy contemplates that those conditions must be satisfied.

The restrictions on use of Heritage Plaza patio satisfy the applicable constitutional standard because they are viewpoint neutral and reasonable in light of the purpose served by the forum. *Cornelius*, 473 U.S. at 811.  Plaintiffs muddle the analysis.  (Doc. 49, at 35-39)  The purpose of the forum—the Student Union, including Heritage Plaza patio—is to serve as "the living room of campus," a comfortable place for students to congregate and socialize.  (Doc. 35-3, at p. 90, line 12 to p. 91, line 23) (Doc. 35-4, at p. 64, line 23 to p. 65, line 20; and p. 82, lines 16-25)  As shown by the amici curiae brief in this case (Doc. 33), RSO's at Arkansas State University represent a wide range of views, and the tabling space is available to each and every one of those RSO's, regardless of viewpoint.  (Doc. 35-5, at ¶3)  Shockingly, plaintiffs suggest that exclusion of all expressive activity in the area would make more sense.  (Doc. 49, at 37)  The restriction on use, however, "need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Cornelius*, 473 U.S. at 808.  Dr. Spack and Rouse offered testimony explaining the reasonableness, and plaintiffs have failed to controvert or offer any competing evidence.  (Doc. 35-3, at p. 90, line 16 to p. 91, line 6) (Doc. 35-4, at p. 82, lines 20-25)

## B.      The Policy is facially constitutional and not overbroad.

As an initial matter, the facial challenge is moot because the Arkansas General Assembly enacted Act 184 of 2019, the "FORUM Act", and it became law on February 20, 2019.  This Act requires all public universities in Arkansas, including Arkansas State University, to eliminate free expression areas and to allow students to engage freely and spontaneously in expressive activities anywhere in the outdoor areas of campus.  Arkansas Act 184 of 2019, Sec. 1.

Plaintiffs' overbreadth challenge is also inappropriate because "nothing in the record . . . indicate[s] that the [Policy] will have any different impact on any third parties' interest in free speech than it has on" plaintiffs. *Members of City Council of Los Angeles v. Taxpayers for Vincent*,

466 U.S. 789, 801 (1984).  "In the development of the overbreadth doctrine the Court has been sensitive to the risk that the doctrine itself might sweep so broadly that the exception to ordinary standing requirements would swallow the general rule."  *Id.* at 799.  "It is clear, however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  *Id.* at 800.  Plaintiffs have nothing more than baseless speculation to support their claim that the Policy could be interpreted to apply to casual conversations, hats, or other wearing apparel.  (Doc. 49, at 24-25)  Dr. Spack—defendants' designated 30(b)(6) witness on enforcement of the Policy[1]—specifically stated that the Policy covers formal types of expression such as tabling, not casual conversation or wearing apparel. (Doc. 35-3, at p. 41, lines 4-10; and p. 43, lines 8-20; and p. 48, line 14 to p. 49, line 8)

Further, the Policy mandates content neutral decisions and contains objective criteria to guide administrators.  (Doc. 1-3, at 2-4)  Plaintiffs claim it is "nonsensical" to read the Policy's eight factors as a guide for officials in considering requests.  (Doc. 49, at 17)  The Policy, however, states that those factors "will be used to evaluate any plan requiring approval."  (Doc. 1-3, at 3) Again, plaintiffs' arguments fly in the face of the express language of the Policy.

ASU's significant governmental interests—fulfillment of its educational mission, safety of the campus community and visitors, protection of university property, and equal opportunity for use—are stated clearly in the Policy, and they were discussed in defendants' witnesses' depositions.  (Doc. 1-3, at 2) (Doc. 35-3, at p. 69, line 12 to p. 71, line 1; and p. 75, line 20 to p. 76, line 1; and p. 87, lines 6-25) (Doc. 35-4, p. 11, line 4 to p. 12 line 6) (Doc. 35-11, p. 12, lines

---

[1] Plaintiffs' repeated citations to Dr. Stripling's testimony on this point are immaterial. Dr. Stripling was not designated as a 30(b)(6) witness regarding enforcement.  (Doc. 48, at 14-15)  He also testified that Dr. Spack and her office handle requests for use of the free expression areas, and he had never received or handled a request for space outside the free expression areas. (Doc. 35-2, at p. 29, lines 1-22)

3-21)  Plaintiffs' assertion that these interests are not supported by proof in the record is simply untrue.

The Policy's requirements are also narrowly tailored to serve these interests.  Plaintiffs make only one discernible argument on this point, namely that the Policy would require a single student to give 72-hour notice if she wanted to reserve a location outside the free expression areas. (Doc. 49, at 33)  First, ASU's historical experience has shown that even a single speaker such as Brother Jed can draw large crowds and require police presence to maintain safety.  (Doc. 35-3, p. 86, lines 6-22; Doc. 35-4, at p. 61, lines 1-3; and Doc. 35-11, at p. 13, lines 11-17, and p. 37, line 25 to p. 38, line 9)  ASU cannot constitutionally require only Brother Jed—or only those with potentially offensive messages—to give a 72-hour notice.  As plaintiffs readily admit, any such policy must be content neutral, both facially and as applied.  Second, plaintiffs' assertion assumes that the student is not part of an RSO or cannot otherwise obtain sponsorship from a University department, in which case the student would have many more options without having to give the advance notice.  (Doc. 35-4, at p. 74, line 24 to p. 75, line 3; and p. 84, lines 17-23)  In light of this record proof, the Policy's requirements are narrowly tailored to address ASU's significant interests.

Plaintiffs make the bold and unsupported claim that the Policy does not leave open "any" alternative channel of communication.  (Doc. 49, at 39)  ASU's Policy is not an outright ban on speech or free expression, and it does not encompass casual conversation.  As confirmed by *Bowman*, compliance with the permit requirement can be a valid alternative channel for communication.  *Bowman v. White*, 444 F.3d 967, 981 (8th Cir. 2006).

Lastly, contrary to plaintiffs' representations, no part of the Order in *Rock for Life-UMBC v. Hrabowski*, 643 F. Supp. 2d 729, 748 (D. Md. Jul. 8, 2009) was vacated, and the case was not

remanded.  The case was dismissed and affirmed on appeal.  *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541 (4th Cir. 2010).  The District Court docket confirms no case activity after delivery of the Fourth Circuit's unpublished opinion and mandate.  Once again, plaintiffs' claims are belied by the source documents and actual testimony.

Thus, plaintiffs' arguments fail, and the Policy fully complies with the requirements of the First Amendment.

## II.      ASU's Policy does not violate the Fourteenth Amendment.

The Policy is not unconstitutionally vague because it does not contain definitions of familiar terms with commonly understood meanings.  *Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464, 473-74 (8th Cir. 1991).  "While the terms of the Policy 'may not satisfy those intent on finding fault at all cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.'"  *Families Achieving Independence and Respect v. Neb. Dep't of Soc. Serv.*, 111 F.3d 1408, 1418 (8th Cir. 1997).  The Policy is not vague in geographic scope either.  The Free Expression Areas map shows exactly where the free expression areas are located, as well as their sizes and dimensions.  (Doc. 35-6)  Plaintiffs' vagueness arguments fail.

## III.     Defendants are entitled to qualified immunity.

The U.S. Supreme Court has rejected the tact plaintiffs attempt to use in opposition to qualified immunity.  (Doc. 49, at 43-48)  The Supreme Court explicitly held that "'clearly established law' should not be defined 'at a high level of generality'" and "the clearly established law must be 'particularized' to the facts of the case."  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The Supreme Court was resolute that the unlawfulness of a government official's actions

must be apparent "in the light of pre-existing law." *Id.* (citing *Anderson*, 483 U.S. at 640). Otherwise, plaintiffs could turn the rule of qualified immunity into "virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.*

Plaintiffs' claims that general legal concepts such as "unbridled discretion" and "unlimited designated forum" were clearly established have no relevance to the inquiry. The question is whether the particular actions of the defendants in this case were reasonable in light of existing Eighth Circuit law. The answer is yes.

Plaintiffs fail to point to any existing Eighth Circuit law that would have made a reasonable person believe that the specific requirements of the Policy—scheduling, readily available areas, and other areas available with 72-hour notice—were unconstitutional in any respect. The closest cases on point in the Eighth Circuit support the constitutionality of the very policies and practices that plaintiffs are challenging. *Bowman v. White*, 444 F.3d 967 (8th Cir. 2006); *Ball v. City of Lincoln, Neb.*, 870 F.3d 722 (8th Cir. 2017). Plaintiffs cite to cases outside the Eighth Circuit but fail to show how any of these cases would make an ASU official believe that the Policy here, which expressly requires officials to make content-neutral decisions, somehow permits unbridled discretion. (Doc. 49, at 45-46)

Plaintiffs also acknowledge that separate defendants Dr. Stripling and Dr. Spack had no personal involvement with the events of October 11, 2017, and have no responsibility for the enactment or modification of the Policy. (Doc. 49, at 48) For all these reasons, the defendants are entitled to qualified immunity, and the Court should dismiss all claims against them in their individual capacities.

## IV.      <u>Conclusion.</u>

ASU's Policy and practices are constitutional in all respects.  For the reasons stated herein and in defendants' associated filings, the Court should grant defendants' Motion for Summary Judgment.

Respectfully submitted,

Delena C. Hurst (2007089)
dhurst@asusystem.edu
Associate General Counsel
Arkansas State University System
501 Woodlane Dr., #600
Little Rock, AR 72201
Ph: (501) 660-1009

-and-

Rodney P. Moore (96134)
rpmoore@wlj.com
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201
Ph: (501) 371-0808

-and-

Jeffrey W. Puryear (93109)
jpuryear@wpmfirm.com
Ryan M. Wilson (2008206)
rwilson@wpmfirm.com
WOMACK PHELPS
PURYEAR MAYFIELD & McNEIL, P.A.
P.O. Box 3077
Jonesboro, AR 72403
Ph: (870) 932-0900

By:   /s/ Ryan M. Wilson
       *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of February, 2019, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will send electronic notice to the following counsel of record:

Ethan C. Nobles
NOBLES LAW FIRM
149 S. Market
Benton, AR 72015
ethan@NoblesLawFirm.com

Tyson C. Langhofer
ALLIANCE DEFENDING FREEDOM
15100 N. 90th St.
Scottsdale, AZ 85260
tlanghofer@adflegal.org

Jonathan M. Larcomb
ALLIANCE DEFENDING FREEDOM
440 1st St. NW
Washington, DC 20001
jlarcomb@adflegal.org

David Cortman
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road NE
Suite D-1100
Lawrenceville, GA 30043
dcortman@adflegal.org
        *Attorneys for Plaintiffs*

                                            __/s/ Ryan M. Wilson_____
                                            Ryan M. Wilson